[Cite as *Hicks v. Union Twp.*, 2023-Ohio-874.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| CHRISTOPHER RICHARD HICKS, | : | |
| Appellant, | : | CASE NO. CA2022-10-057 |
| | : | O P I N I O N |
| - vs - | | 3/20/2023 |
| | : | |
| UNION TOWNSHIP, CLERMONT COUNTY BOARD OF TRUSTEES, | : | |
| | : | |
| Appellee. | : | |


APPEAL FROM OHIO COURT OF CLAIMS
Case No. 2022-00408PQ


Christopher Richard Hicks, pro se.

Bricker & Eckler, and Brodi J. Conover, for appellee.


**HENDRICKSON, J.**

{¶1} Appellant, Christopher Richard Hicks, appeals from a decision rendered by the Court of Claims of Ohio which adopted a special master's report and recommendation in favor of appellee, the Union Township, Clermont County Board of Trustees ("the Township"), on a public-records dispute brought under R.C. 2743.75. For the following reasons, we affirm the judgment of the Court of Claims.

{¶2} On January 12, 2022, Hicks submitted a public records request to the

Township as follows:

> This is a record request for the mailing lists for the township newsletter. I am requesting two formats:
>
> - EMAIL LIST – the full email list used for township newsletters.
> - MAIL LIST – the full mail list used for township newsletters.
>
> I request the records in electronic format. * * *

The Township denied Hicks' request, stating in a January 18, 2022 response that "[n]either of [the] lists * * * document the activities or function of the Township and, therefore, neither are public records." A subsequent response by legal counsel for the Township, emailed to Hicks on January 26, 2022, reiterated that the requested items would not be produced as "neither of the records [Hicks] requested document the activity and function of the Township." Hicks sought clarification and reconsideration of the denial. On May 10, 2022, the Township notified Hicks that "the information [he sought was] not a public record and does not document the activity of the Township."

{¶3} On May 11, 2022, Hicks, acting pro se, filed a complaint in the Court of Claims pursuant to R.C. 2743.75(D) asserting that the Township denied him access to public records in violation of R.C. 149.43(B). Specifically, Hicks alleged in his complaint the following:

> The [T]ownship uses postal mail and email to distribute newsletters to some or all citizens in the township. The [T]ownship maintains an online sign up to receive the newsletters via email (consisting of only name and email addresses).
>
> * * *
>
> The case comprises a postal mailing list and an email distribution list, with no personal information beyond that needed to "mail." The requested lists do not contain personal information nor information that is personal in the sense of profiling (ex: jury member). The list is a record that documents

- 2 -

"the operations, or other activities of the office."

* * *

Requester asks that the two requested distribution lists be provided in total or with limited redaction that may be supported by statute or caselaw.

{¶4} The Court of Claims appointed a special master to handle the case pursuant to R.C. 2743.75(A), and the matter was referred to mediation. On July 8, 2022, mediation was terminated after the parties failed to reach a settlement. Thereafter, the Township filed a response to Hicks' complaint, contending that "the records sought by [Hicks] are non-records and do not document the activity and function of the Township, and therefore are not subject to release." The Township requested the court deny Hicks' complaint and in support of its request, submitted the affidavit of Susan C. Ayers, the Township Administrator since March 2022.

{¶5} In her affidavit, Ayers attested that since at least 2013, the Township has produced quarterly newsletters that focus on stories for the community. Topics the newsletters have covered include ways of growing churches in the Township, warnings of scammers, tips on preventing and preparing for fires during the winter, and information on junk disposal. The newsletters have also included the Township's meeting schedule, the contact information for each of the Township's department, and a "Bulletin Board" section that provides notice of specific programs or upcoming events. To the best of Ayers' knowledge, "the newsletter was not started by a Trustee resolution."

{¶6} Ayers further attested as follows regarding distribution of the newsletters:

7. The Township utilizes a third-party direct mail vendor that sends the newsletter to all Township addresses. That vendor is responsible for assembling the list of addresses, maintaining the list, and ensuring that the newsletter is mailed to each of those addresses.

8. The Township does not assemble the list, does not maintain

the list, and does not use the list for any other reason.

9. The Township also provides an opportunity for individuals to subscribe to the newsletter and receive it electronically.

10. On the Township's website, those individuals are asked for their name and their email address.

11. The Township has a list of the names and email addresses that are sent a copy of the electronic version of the newsletter.

12. That list is only used for the administrative purpose of sending the electronic version of the newsletter. It is not kept for or used for any other reason.

13. The mailing list and the email mailing list for the Township newsletter do not document the activity and function of the Township. They are only kept for the administrative purpose of sending out the newsletter.

{¶7} With leave, Hicks filed a reply to the Township's responsive pleading. Hicks challenged the accuracy of Ayers affidavit, contending the affidavit was "riddled with falsehoods, selective information, and inaccuracies." Hicks noted that Ayers had only recently been hired as Township Administrator and did not have familiarity with the newsletter or all that it entailed. Hicks obtained an affidavit from Gina DiMario, a retired, former employee of the Township who had served as the editor and manager of the Township newsletter from 2005 to March 2022.

{¶8} In her affidavit, DiMario attested that the newsletter, which was printed quarterly, had been "part of [her] job responsibilities, job description and job evaluation." In her position, she had expanded the newsletter from four to six pages and worked to create new and pertinent topics. According to DiMario, the newsletters were "published as a government activity to provide the Union Township community with pertinent information from its governing body to its residents and businesses." She stated that the newsletters included articles from the police, fire, service, and zoning departments, information about township events and meetings, and contact information for each Township department.

The newsletters also included "seasonal and topical stories," which covered items such as new business spotlights, the history of the Township, improvements to school districts, and the development of various areas inside the Township. The newsletters did not include stories submitted from the general public, as "the [T]ownship newsletter was not a vehicle for personal 'blogging.'" Copies of the newsletters from 2013 to 2022 exist online.

{¶9} Regarding distribution of the newsletters, DiMario averred the following about those that were printed and mailed:

> 9. Purchase orders, approved by the Trustees, paid for the printing and mailing of the newsletter.
>
> 10. Cincinnati Print Solutions did the printing and the Post Office did the mailing.
>
> 11. Mailing was based on a distribution list maintained by the printer in conjunction with the Post Office and based on local zip codes.
>
> 12. The newsletter was mailed to both residences and businesses.

{¶10} As for the newsletters that were emailed, DiMario stated:

> 14. Beyond the physical document, the newsletter encompassed a database for email distribution.
>
> 15. A web portal allows for interested persons to sign up for electronic distribution of the newsletter. It is maintained by Brandon Miller, another [Union Township] employee.
>
> 16. The system included a database of those who signed up.
>
> 17. The newsletter's electronic distribution is done via a special newsletter address. The emails allow for subscribe and unsubscribe.

{¶11} Relying on DiMario's affidavit, Hicks contended the newsletter program is a government function and that both the mail and email distribution lists are public records required to be made available in accordance with R.C. 149.43(B). He argued that the "requested information is essential to the ability of Requester to understand and form a

critique of a specific function of the government, staffed and paid for with tax dollars." Hicks indicated he desired to obtain the newsletter to "evaluate the conduct of the newsletter program." For example, Hicks indicated he wished to learn who the newsletter was being sent to (residences and businesses or only residences), if there were any citizens being omitted, if there was an overlap of individuals receiving the newsletter by mail and email, how "well-saturated" the email list was, and whether the emails were "valid or bot accounts."

{¶12} On August 16, 2022, the special master issued a report and recommendation finding that based on the pleadings, affidavits and documents submitted in the action, "Hicks has not shown by clear and convincing evidence that the requested [T]ownship newsletter mailing or email lists meet the definition of a 'record' of the Township and are not governed by the Public Records Act." The special master determined that the mail and email lists, which are kept solely for the administrative purpose of sending out the newsletter, "constitute contact information used for administrative convenience in cost-effective communication to township residents, businesses, and other interested persons. * * * [D]isclosure of the names and/or addresses of persons who automatically receive or have subscribed to the township newsletter would not further the purposes of the [Public Records] Act."

{¶13} Hicks objected to the special master's report and recommendation, contending that the special master erred when it classified the email list and mailing list as "administrative convenience[s]." Hicks argued that the distribution lists are public records that document "other activities" of the Township, which should be produced as they are "not protected by caselaw, privilege, or statutory exceptions." The Township filed a response to Hicks' objections, arguing the objections were without merit as there was no error of law or defect in the special master's report and recommendation.

{¶14} On September 12, 2022, the Court of Claims overruled Hicks' objections and

adopted the special master's report and recommendation, concluding that "neither the full email list nor the full postal, mailing list documents the organization, functions, policies, decisions, procedures, operations, or other activities of Union Township within the meaning of R.C. 149.011(G). Rather, the full email list and the full postal mailing list represent contact information that Union Township uses as a matter of administrative convenience." Hicks' request for the production of records was therefore denied.

{¶15} Hicks timely appealed pursuant to R.C. 2743.75(G)(1), raising the following as his sole assignment of error:

{¶16} THE COURT OF CLAIMS ERRED BY HOLDING THE REQUESTED RECORDS WERE NOT PUBLIC RECORDS.

{¶17} Ohio's Public Records Act "reflects the state's policy that 'open government serves the public interest and our democratic system.'" *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, ¶ 10, quoting *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 28. The Act, codified in R.C. 149.43, provides that upon request a public office "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). "R.C. 149.43 * * * provides for full access to all public records upon request unless the requested records fall within one of the specific exceptions listed in the Act." *State ex rel. Miami Student v. Miami Univ.*, 79 Ohio St.3d 168, 170 (1997). The Public Records Act is, therefore, "'construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records.'" *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, ¶ 7, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376 (1996).

{¶18} Traditionally, an action in mandamus under R.C. 149.43(C) was the only remedy to compel compliance with R.C. 149.43. *Welsh-Huggins* at ¶ 11. However, in 2016,

the Ohio legislature enacted R.C. 2743.75 as an alternative to a mandamus action. The statute was enacted in an effort "'to provide for an expeditious and economical procedure that attempts to resolve disputes alleging a denial of access to public records' in violation of R.C. 149.43(B)." *Id.* at ¶ 12, citing R.C. 2743.75(A).

{¶19} "While the process established for proceedings under R.C. 2743.75 may be new, the fundamental legal principles that govern disputes over access to alleged public records are not." *Id.* at ¶ 9. Public-records-access proceedings brought in the Court of Claims pursuant to R.C. 2743.75 are "consistent with the standards that are applicable to mandamus-enforcement actions." *Id.* at ¶ 32, citing R.C. 2743.75(F)(1). "To that end, as in a R.C. 149.43(C) mandamus action, a complainant in a R.C. 2743.75 proceeding carries the 'burden of production * * * to plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available.'" *Viola v. Ohio Atty. Gen., Pub. Record Unit*, 10th Dist. Franklin No. 21AP-126, 2021-Ohio-3828, ¶ 16, quoting *Welsh-Huggins* at ¶ 33. "Likewise, the 'burden of persuasion' remains at all times on the requester to prove his or her 'right to relief under R.C. 2743.75 by the requisite quantum of evidence.'" *Id.*, quoting *Welsh-Huggins* at ¶ 34.

{¶20} In an action filed under R.C. 2743.75, the requester must establish his or her right to relief by clear and convincing evidence. *Viola v. Cuyahoga Cty. Pros. Office.*, 8th Dist. Cuyahoga No. 110315, 2021-Ohio-4210, ¶ 16; *Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 27-30. Clear and convincing evidence "'is a measure or degree of proof that is more than a preponderance of the evidence, but not to the extent of such certainty as proof beyond a reasonable doubt, which is the requisite burden of proof in a criminal case, and that will produce in the trier of fact's mind a firm belief as to the fact sought to be established." *State ex rel. Griffin v. Doe*, 165 Ohio St.3d 577,

2021-Ohio-3626, ¶ 5, quoting *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14.

**{¶21}** When a public-records-access case is appealed pursuant to R.C. 2743.75(G)(1), "Ohio courts of appeals have applied the standard of appellate review applicable to such mixed questions of law and fact, reviewing the application of a claimed exemption de novo while according due deference to the trial court's factual determinations." *Welsh-Huggins*, 2020-Ohio-5371 at ¶ 39.

**{¶22}** Hicks argues that the Court of Claims erred in denying his records request as the requested email distribution list and mail distribution list for the Township's newsletters are public records "essential to monitoring the performance of government." He contends the lists "document a function of government" and are not kept merely as an "administrative convenience." Because public policy favors their disclosure, and because the records are not part of any statutory exception, Hicks contends the Court of Claims erred by denying his request for production of the records.

**{¶23}** Pursuant to R.C. 149.43(A)(1), a "'[p]ublic record' means records kept by any public office." R.C. 149.011(G) defines "records" as

> any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

**{¶24}** R.C. 9.03(B) permits the "governing body of a political subdivision * * *[to] use public funds to publish and distribute newsletters, or to use any other means, to communicate information about the plans, policies, and operations of the political subdivision to members of the public within the political subdivision and to other persons who may be affected by the political subdivision." There is no doubt that the newsletters

created by the Township qualify as a public record subject to production upon request. The question posed by the present appeal is whether the list of addresses and list of names and email addresses where the newsletters are distributed constitute a public record.

**{¶25}** To establish that the mail distribution list and the email distribution list are records for purposes of R.C. 149.011(G) and 149.43, Hicks must have proved by clear and convincing evidence that the distribution lists are (1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the state agencies, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the Township. *See State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, ¶ 19. If Hicks fails to prove any of these three requirements, he is not entitled to compel access to the requested lists, as those records are not subject to disclosure under the Public Records Act. *Id. See also State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, ¶ 9 ("To the extent that an item does not serve to document the activities of a public office, it is not a public record and need not be disclosed").

### Email Distribution List

**{¶26}** Hicks presented evidence that the Township has a web portal that allows interested individuals to sign up to receive the newsletters by email. This web portal, maintained by a Township employee, asks individuals to provide their names and email addresses. This information is then used by the Township to email out the newsletters.

**{¶27}** The email distribution list satisfies the first two requirements for "records" under R.C. 149.011(G). The email distribution list is (1) an item (2) created by the Township. Whether the email distribution list is a "record" therefore depends upon whether the email list meets the final requirement specified in R.C. 149.011(G). Does it "serve[] to document the organization, functions, policies, decisions, procedures, operations, or other

activities" of the Township?

**{¶28}** In answering this question, it is helpful to review supreme court precedent that examined this issue, albeit in a different context. For example, in *Johnson*, 2005-Ohio-4384, the Ohio Supreme Court considered whether state-employee residential addresses were public records under R.C. 149.011(G). There, the requester, Dispatch Printing Company, sought payroll records for all state employees, including names, addresses, job and agency titles and all pay fields from the Ohio Department of Administrative Services (DAS) and other state agencies. When DAS and the other state agencies refused to turn over the state-employee residential addresses, Dispatch filed a mandamus action with the supreme court. The court found that "simply because an item is received and kept by a public office does not transform it into a record under R.C. 149.011(G). '[N]ot all items in a personnel file [or other generally public record] may be considered public records.'" *Id.* at ¶ 29, quoting *State ex rel. Fant v. Enright*, 66 Ohio St.3d 186, 188 (1993). "None of th[e] evidence [submitted] establishes that state-employees home addresses 'document the organization, functions, policies, decisions, procedures, operations, or other activities' of the state agencies within the meaning of R.C. 149.011(G). *At best, home addresses represent contact information used as a matter of administrative convenience*." (Emphasis added.) *Id.* at ¶ 25.

**{¶29}** The court noted that "any state-agency policy requiring that its employees provide and update their home addresses would document a policy and procedure of a public office, but the home addresses themselves would not do so." *Id.* at ¶ 26. "[H]ome addresses generally document the places to which state employees return *after* they have performed the work comprising the 'organization, functions, policies, decisions, procedures, operations, or other activities' of their state agencies." (Emphasis sic.) *Id.* The court further noted that while the purpose of the Public Records Act was to "expose government activity

to public scrutiny," the "[d]isclosure of the home addresses of state employees 'would reveal little or nothing about the employing agencies or their activities.'" *Id.* at ¶ 27, quoting *United States Dept. of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497, 114 S.Ct. 1006 (1994). The court therefore denied the writ of mandamus. *Id.*[1]

{¶30} In *Bond*, 2002-Ohio-7117, the Ohio Supreme Court considered whether juror questionnaires and a list of juror names and addresses were "public records" subject to inspection under R.C. 149.43. A newspaper had filed a mandamus action asking the supreme court to order a trial court in a capital-murder case to release the information. *Id.* at ¶ 5. The court held that "[t]he disclosure of information regarding prospective and impaneled jurors does little to ensure the accountability of government or shed light on the trial court's performance of its statutory duties. * * * [D]isclosure of information about private citizens is not required when such information 'reveals little or nothing about an agency's own conduct' and 'would do nothing to further the purposes of the [Public Records] Act.'" *Id.* at ¶ 11, quoting *McCleary v. Roberts*, 88 Ohio St.3d 365, 368-369 (2000).

{¶31} The court noted that the trial court did not use the juror questionnaire response information in rendering its decision, "but rather collected the questionnaires for the benefit of the litigants in selecting an impartial jury and maintained the jurors' names and addresses for the administrative purpose of identifying and contacting individual jurors." *Id.* at ¶ 12. The court therefore concluded that the questionnaire responses and juror names and addresses were not "records" subject to disclosure under R.C. 149.43. *Id.* at ¶ 13. However, the court distinguished the juror responses from the actual questions from which

---

1. The supreme court did recognize that there were "limited exceptions in which public-employee home addresses may constitute records as defined by R.C. 149.011(G)." *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, ¶ 39. For instance, when the public employee's work address is also that employee's home address or "when one of the employment requirements is that the employee live within a certain state, county, or municipality, that portion of the home address constitutes a record for purposes of the Public Records Act." *Id.*

the responses were solicited and determined that "the questions that elicited such responses [were] invariably written or approved by the trial court." *Id.* As such, the supreme court concluded that the "questions serve to document the activities of a public office and thereby satisfy the statutory definition of a 'record' under R.C. 149.011(G)." *Id.* The supreme court ordered that the questionnaires without responses be disclosed to the newspaper. *Id.*

{¶32} In *McCleary*, 88 Ohio St.3d 365, the Ohio Supreme Court was asked to determine whether a city department's database containing the identifying, personal information of children who used the city's recreation facilitates constituted a "record" for purposes of the Public Records Act. The court found that it was not a record, holding that "[s]tanding alone, that information, *i.e.*, names of children, home addresses, names of parents and guardians, and medical information, does nothing to document any aspect of the City's Recreation and Parks Department." *Id.* at 368. The court further stated:

> The existence of the Department's photo identification program has been well documented. It is no secret as to when the program was initiated, the purpose of the program, how the program operates, and the effect it has had in making the City's recreational facilities safer and more manageable. It is also no secret that the Department possesses certain personal information, voluntarily provided, of those children who use the City's swimming pools and recreational facilities. *We fail to see how release of the requested information to appellee, or anyone else, would provide any further insight into the operation of the Department's photo identification program than that already available.*

(Emphasis added.) *Id.* at 369.

{¶33} Finally, the court emphasized that the personal information requested was provided by private citizens rather than contained in the personnel files of a public employees. It stated:

> The subjects of appellee's public records requests are not employees of the government entity having custody of the

information. They are children—private citizens of a government, which has, as a matter of public policy, determined that it is necessary to compile private information on these citizens. It seems to us that there is a clear distinction between public employees and their public employment personnel files and files on private citizens created by government. To that extent the personal information requested by appellee is clearly outside the scope of R.C. 149.43 and is not subject to disclosure.

*Id.* at 369-370.

{¶34} Though email distribution lists were not at issue in *Johnson, Bond,* and *McCleary*, the analysis and holdings set forth in those cases provide useful guidance in analyzing the issue before us. Like in *McCleary*, the information subject to the public records request is information of private citizens – names and email addresses – that has been compiled by the government into a database. Standing alone, the names and email addresses do nothing to document any aspect of the Township's newsletter program. Releasing such information to Hicks, or anyone else, would not provide any further insight into the Township's newsletter program than that already available from accessing the newsletter itself or the Township's policies regarding the creation and distribution of the newsletter. As the supreme court noted in *Bond*, "disclosure of information about private citizens is not required when such information 'reveals little or nothing about an agency's own conduct' and 'would do nothing to further the purposes of the [Public Records] Act.'" *Bond*, 2002-Ohio-7117 at ¶ 11, quoting *McCleary* at 368-369. Hicks has not presented evidence establishing that private citizens' names and email addresses "document the organization, functions, policies, decisions, procedures, operations, or other activities" of the Township within the meaning of R.C. 149.011(G). Rather, the names and email addresses represent contact information used as a matter of convenience in distributing the newsletters. *See Johnson*, 2005-Ohio-4384 at ¶ 25; *Bond* at ¶ 12. We therefore find that the email distribution list for the newsletters is not a public record as defined by R.C.

- 14 -

149.011(G) and is not subject to production by the Township under R.C. 149.43. The Court of Claims did not err in denying Hicks' request for production of the names and email addresses comprising the email distribution list.

**{¶35}** In reaching this determination, we note that we have reviewed the 2014 Ohio Attorney General Opinion cited and relied upon by Hicks in his appellate brief. *See* 2014 Ohio Atty.Gen.Ops. No. 2014-029. Though "Attorney General Opinions are not binding on courts," they can be persuasive authority. *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.,* 99 Ohio St.3d 430, 2003-Ohio-4123, ¶ 40. In the opinion at issue here, the attorney general addressed whether the personal email address of a township resident that appears in a public record of the township was itself a public record. Atty.Gen.Ops. No. 2014-029, at 1. There, a West Chester Township fiscal officer sent an email to several hundreds of people discussing township activities, the conduct of two township trustees, the work of the township's legal counsel, duties of the township fiscal officer, and the township fiscal officer's impressions of the actions of the township trustees and the township's legal counsel. *Id.* The Attorney General Opinion examined whether the personal email addresses of the recipients of the email are themselves public records, and concluded that "[w]hether personal email addresses that are contained in a public record are themselves public records is a fact-specific inquiry that must be determined on a case-by-case basis." *Id.* at paragraph one of the syllabus.

**{¶36}** "To determine whether personal email addresses document the organization, functions, policies, decisions, procedures, operations, or other activities of the township, the township must determine whether disclosure of the email addresses would facilitate the public's ability to monitor the functions of the township in performing its statutory duties, and whether the township actually used the email addresses in making decisions or in performing its functions." *Id.* at paragraph three of the syllabus. Factors the attorney

general identified as relevant to this determination include (1) whether the email was sent as part of the township's or its employees' official duties, (2) whether a township resolution required the sending of such email, (3) whether the recipients are constituents of the township, (4) whether the recipients' email addresses are maintained in a database of the township, and (5) whether the recipients provided their email addresses to the township for the purpose of receiving an email that is sent by the township as part of its official activities. *Id.* at 9. "Affirmative responses to some or all of these queries may lead the township to conclude that the personal email addresses were used in the performance of township functions and disclosing the personal email addresses will facilitate the public's ability to monitor those functions." *Id.* at 9-10. However, if the email was sent to recipients for a reason unrelated to the performance of township responsibilities, "the township may conclude that the personal email addresses were not used by the township in the performance of its functions and disclosure of the email addresses will shed little light on the functions and activities of the township." *Id.* at 10.

{¶37} Looking at the principles expressed in the Attorney General Opinion, we are not convinced that the names and addresses contained in the email distribution list constitute a "record" as defined in R.C. 149.011(G). Though the names and addresses are kept in a Township-created database and are used to send the Township-created newsletter, the recipients of the emailed newsletter are not limited to Union Township residents. Rather, anyone across the globe may subscribe to the newsletter. Those who do subscribe to the newsletter do not participate in the creation of the newsletter or contribute to the contents of the newsletter. The recipients, therefore, are not part of the decision-making process surrounding the newsletter and they do not assist the township in the performance of its functions. Rather, the names and email addresses are merely used as a matter of administrative convenience in sending out the newsletters. *See Johnson,*

2005-Ohio-4384 at ¶ 25; *Bond*, 2002-Ohio-7117 at ¶ 12. We therefore conclude that the Court of Claims did not err in denying Hicks' request for production of the names and email addresses comprising the email distribution list.

## Mail Distribution List

{¶38} The mail distribution list for the newsletter differs significantly from the email distribution list. Both Ayers' and DiMario's affidavits indicate that after the newsletter is created by the Township, it is provided to a printer, or "direct mail vendor." According to DiMario, "[m]ailing was based on a distribution list maintained by the printer in conjunction with the Post Office and based on local zip codes." Ayers attested that it was this vendor who "is responsible for assembling the lists of addresses, maintaining the list, and ensuring the newsletter is mailed to each of those addresses." Ayers further attested that the Township "does not assemble the list, does not maintain the list, and does not use the list for any other reason."

{¶39} The mail distribution list satisfies the first requirement of the three-part test for "records" under R.C. 149.011(G), as the list of addresses is an "item." It also arguably meets the second part of the three-part test as the address list comes under the jurisdiction of the Township. Though "a public office has no duty to provide records that do not exist, or that it does not possess;" *Viola*, 2021-Ohio-4210 at ¶ 22, citing *State ex rel. Gooden v. Kagel*, 138 Ohio St.3d 343, 2014-Ohio-869, ¶ 5, 8-9; a governmental entity "cannot conceal information concerning public duties by delegating these duties to a private entity." *State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654, 659 (2001). *See also State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 403 ("the open-record law [cannot] be circumvented by the delegation of a public duty to a third-party, and these documents are not any less a public record simply because they were in the possession of [a private entity]"). Records maintained by a private entity are nonetheless "public records"

under R.C. 149.43 where (1) [the private entity] prepare[s] the records in order to carry out a public office's responsibilities, (2) the public office * * * [is] able to monitor the private entity's performance, and (3) the public office * * * [has] access to the records for this purpose." *Krings* at 657.

{¶40} Here, the Township, authorized by R.C. 9.03(B), used public funds and contracted with a private entity, the printer, to have the newsletters mailed to all Township addresses. Though the printer, a private entity, was responsible for creating and maintaining the mail distribution list, the Township had to be able to monitor the printer's performance and ensure mailing occurred before paying the printer for its services. The mailing list, therefore, came under the jurisdiction of the Township.

{¶41} Nonetheless, Hicks has failed to present evidence demonstrating the third part of the three-part tests for records under R.C. 149.011(G). Hicks has not demonstrated that the mailing list serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the Township. Rather, the addresses that comprise the mailing list represent contact information used as a matter of convenience in distributing the newsletters. *See Johnson*, 2005-Ohio-4384 at ¶ 25; *Bond*, 2002-Ohio-7117 at ¶ 12. *Compare State ex. rel. Harper v. Muskingum Watershed Conservancy Dist.*, 5th Dist. Tuscarawas No. 2013 AP 06 0024, 2014-Ohio-1222 (finding the names and billing addresses of those engaged in business with the Watershed District were public records as they documented the rental and leasing functions of the government); *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770 (stating the names and addresses of foster caregivers were public records as they documented the Department of Job and Family Services' function of certifying and maintaining foster caregivers). The mailing addresses do not provide any insight into the Township's newsletter program beyond that already available from accessing the newsletter itself or

from accessing the Township's policies regarding the creation and distribution of the newsletter. *See Bond* at ¶ 11. We therefore find that the mail distribution list for the newsletters is not a public record as defined by R.C. 149.011(G) and is not subject to production by the Township under R.C. 149.43. The Court of Claims did not err in denying Hicks' request for production of the addresses comprising the mail distribution list.

{¶42} Accordingly, for the reasons stated above, we find that the Court of Claims did not err in denying Hicks' public records request for the email distribution list or the mail distribution list for the Township's newsletter. Hicks' sole assignment of error is overruled.

{¶43} Judgment affirmed.


S. POWELL, P.J., concurs.

M. POWELL, J., concurs in part and dissents in part.


**M. Powell, J., concurring in part and dissenting in part.**

{¶44} I agree with the majority that both the email and mail distribution lists are "documents, devices, or items" under the jurisdiction of the Township and that the issue in this appeal concerns whether the email and mail distribution lists serve to document the "functions, policies, decisions, procedures, operations, or other activities" of the Township as provided in R.C. 149.011. I also agree with the majority that the email distribution list does not serve to document the "functions, policies, decisions, procedures, operations, or other activities" of the Township and is, therefore, not a public record.[2] However, for the reasons detailed herein, I disagree with the majority's holding that the mail distribution list

---

2. There was no evidence to suggest that the email distribution list resulted from anything other than requests from a member of the public and that the Township sent a digital version of the newsletter to those who had requested a digital newsletter. In this respect, the email distribution list was only a "contact list" and the names and email addresses of the recipients do not document "the organization, functions, policies, decisions, procedures, operations, or other activities of the office." The mail distribution list, on the other hand, results from a decision of the Township.

is not a public record under R.C. 149.011(G).

**{¶45}** R.C. 9.03(B) authorizes a political subdivision to "publish and distribute newsletters * * * to communicate information about the plans, policies, and operations of the political subdivision to members of the public." The Township elected to exercise its authority under R.C. 9.03(B) to implement a newsletter program. According to Township Administrator Susan Ayers, "[t]o the best of my knowledge, the newsletter was not started by a Trustee resolution." The Township distributes the newsletter by ordinary mail and email. Hicks is concerned that the Township is "selectively distributing its approved messages, omitting parts of the community, or shadow-banning some members of the community." Hicks requested that the Township provide him copies of its mail and email distribution lists for the newsletter. The newsletter which the Township distributes by ordinary mail is addressed to "Our friends at" and is therefore sent to an address, not a person. Thus, the mail distribution list consists only of addresses without associated names and contains no more personal information than may be gleaned from recording addresses as one walks down the street. Hicks contends that disclosure of the mail distribution list would serve the purposes of R.C. 149.43 because it would permit him to monitor the Township's distribution of the newsletter. The newsletter is not a routine administrative communication incident to some other primary function of the Township, but a Township sanctioned communication to members of the public. Distribution of the newsletter is an integral aspect of the newsletter program as the means by which the Township communicates its message to the public. The mail distribution list would reveal the addresses to which the Township mails the newsletter and thus document the distribution aspect of the program.

**{¶46}** In holding that the mail distribution list is not a public record subject to disclosure, the majority relies upon the Ohio Supreme Court's opinions in *Johnson, Bond,*

and *McCleary*.  In each of those cases, the supreme court held that the relator was not entitled to a writ of mandamus to compel the production of records which included private addresses.  The supreme court held in each of the cases that the personal information sought did not satisfy the R.C. 149.011(G) definition of "records."

{¶47} It is clear from *Johnson*, *Bond*, and *McCleary* that private addresses maintained by a public office do not enjoy a special protected status under Ohio's public records statutes and jurisprudence.  The writs were denied in those cases, not because the requests involved private addresses, but because the addresses did not serve to document the "functions, policies, decisions, procedures, operations, or other activities" of the respective public offices.  None of those cases established a bright-line rule that private addresses maintained by a public office are not records under R.C. 149.011(G).  The holding in *Johnson* was that "*in general*, state-employee home addresses are not 'records' under R.C. 149.011(G) and 149.43 because they do not document the organization, functions, policies, decisions, procedures, operations, or other activities of the state and its agencies."  (Emphasis added.)  *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, ¶ 1.  *Johnson* further acknowledged that state-employee home addresses may be considered public records in other circumstances: "When one of the employment requirements is that the employee live within a certain state, county, or municipality, that portion of the home address constitutes a record for purposes of the Public Records Act."  *Id.* at ¶ 39.  In a case decided after *Johnson*, *Bond*, and *McCleary*, the supreme court held that a database containing the names and addresses of foster caregivers maintained by the Ohio Department of Jobs and Family Services ("ODJFS") is a public record under R.C. 149.011(G).  *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770.  *See also State ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 5th Dist. Tuscarawas No. 2013 AP 06 0024, 2014-Ohio-

1222, ¶ 8 (noting that the *Johnson*'s holding "did not extend to addresses in general"). Thus, resolution of whether a database of private addresses kept by a public office is a "public record" hinges upon whether the office's use and maintenance of addresses document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

{¶48} Furthermore, the fact that the information requested by Hicks consists of addresses does not lead only to a conclusion that the records are mere "contact information" maintained and used solely as an administrative convenience. As discussed above, the supreme court held that a database containing the names and addresses of foster caregivers is a public record under R.C. 149.011(G) because it documents the ODJFS's activities in the certification of foster caregivers. *Jones-Kelley* at ¶ 7. Additionally, the Fifth District Court of Appeals in *Harper* rejected a conservancy district's argument that the addresses of persons leasing property from the district were not public records subject to disclosure, finding that the records shed light on the district's billing practices. *Harper* at ¶ 11. Like the case at bar, the addresses of the foster caregivers in *Jones-Kelly* and the lessees in *Harper* certainly promoted administrative efficiency in the certification of the caregivers and the billing of the lessees. Nonetheless, the addresses were found to be public records because they also documented the ODJFS's certification of foster caregivers and the conservancy district's billing practices. The same reasoning applies to the Township's mail distribution list because it facilitates public oversight of the distribution aspect of the newsletter program.

{¶49} The upshot of *Johnson*, *Bond*, and *McCleary* is that records maintained solely as an administrative incident of some other primary function do not "document the organization, functions, policies, decisions, procedures, operations, or other activities of the office" and are not public records. Indeed, in most instances, private addresses maintained

by a public office and used for routine communications with the addressees will not document the "organization, functions, policies, decisions, procedures, operations, or other activities of the office." However, as discussed below, the mail distribution list is more than an administrative convenience in the Township's operation of the newsletter program.

{¶50} The gist of the majority opinion is that the mail distribution list is not a public record because it is maintained by the Township for administrative convenience in the mailing of the newsletter. To be sure, promotion of administrative convenience is a purpose for which government maintains many of its records. Certainly, the mail distribution list serves to promote administrative convenience in the mailing of the newsletter. However, that is not determinative of whether the mail distribution list is a "record" under R.C. 149.011(G). That a record promotes administrative convenience does not mean that it may not also "document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." These concepts are not mutually exclusive. The supreme court recognized this in *Bond*: "To the extent that an item does not serve to document the activities of a public office, it is not a public record and need not be disclosed." *State ex rel. Beacon Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, ¶ 29. There is nothing in the language of R.C. 149.011(G) suggesting that records that promote administrative efficiencies are excluded from the definition of "records," without regard to whether the record documents the organization, functions, policies, decisions, procedures, operations, or other activities of the public office. The supreme court in *Johnson* and *Bond* did not hold that the requested records were not public records because they promoted administrative efficiency, but rather because the information did not document the activities of the public office. Nor did the supreme court hold in those cases that a record could not promote administrative efficiency and also document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. To be clear, the analysis of whether

a record is a public record is concerned not with whether the record promotes administrative convenience but with whether the record documents the activities of the public office. Thus, the administrative convenience component of the Township's maintenance and use of the mail distribution list does not make it any less a public record to the extent that it documents the Township's operation of the newsletter program. The mail distribution list, despite being maintained for administrative convenience in the mailing of the newsletter, also memorializes the addresses to which the Township is mailing the newsletter and therefore documents this aspect of the newsletter program. Indeed, in view of Ayers' affidavit averment that she is unaware of any "Trustee resolution" establishing the newsletter program, the mail distribution list may be the best, if not the only, record documenting the Township's distribution of the newsletter.[3]

{¶51} Hicks expresses concerns that the Township is operating the newsletter program in a manner which targets or excludes certain communities or persons. The Township asserts that its newsletter is mailed to all addresses within Union Township. However, Hicks is not obliged to accept the Township's contention at face value in lieu of his records request. The mail distribution list would permit Hicks to monitor whether the Township is operating its newsletter program as he fears or as contended by the Township. "Inherent in Ohio's Public Records Law is the public's right to monitor the conduct of government." *State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365, 369 (2000); *Johnson*, 2005-Ohio-4384 at ¶ 27. Disclosure of the Township's mail distribution list would shed light on and provide further insight into which addresses receive the Township's newsletter,

---

3. In asserting that the mail distribution list does "not provide any insight into the Township's newsletter program beyond that already available from accessing the newsletter itself or from accessing the Township's policies regarding the creation and distribution of the newsletter," the majority opinion suggests that Hicks' concerns may be satisfied by resort to other records. Assuming there are other records documenting distribution of the newsletter, that redundancy does not render the mail distribution list any less a public record to the extent it documents the Township's operation of the newsletter program.

would help monitor the conduct of the Township, and would further the purposes of R.C. 149.43.

{¶52} In summary, the newsletter is an official communication from the Township to members of the public. Distribution of the newsletter is a fundamental aspect of the operation of the program. The mail distribution list contains the addresses to which the newsletter is mailed. Disclosure of the mail distribution list promotes the purposes of R.C. 149.43 because it documents the addresses to which the Township mails the newsletter and permits Hicks to monitor this fundamental aspect of the newsletter program. Based upon the foregoing, I find that the mail distribution list is a public record. I would therefore reverse the Court of Claims' denial of Hicks' request to inspect or receive the mail distribution list.

{¶53} With respect and regard for my colleagues in the majority, I dissent from the majority's decision holding that the mail distribution list is not a public record under R.C. 149.011(G).