[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hicks v. Union Twp. Clermont Cty. Bd. of Trustees*, Slip Opinion No. 2024-Ohio-5449.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5449

HICKS, APPELLANT, *v.* UNION TOWNSHIP, CLERMONT COUNTY BOARD OF TRUSTEES, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hicks v. Union Twp. Clermont Cty. Bd. of Trustees*, Slip Opinion No. 2024-Ohio-5449.]

*R.C. 143.43—Public-records requests—Township-constituent addresses—Mail-distribution lists for township newsletter document functions, procedures, and activities of the township—Court of appeals' judgment reversed and cause remanded.*

(No. 2023-0580—Submitted December 13, 2023—Decided November 21, 2024.)

APPEAL from the Court of Appeals for Clermont County, No. CA2022-10-057, 2023-Ohio-874.

_____

DONNELLY, J., authored the opinion of the court, which KENNEDY, C.J., and BRUNNER and DETERS, JJ., joined. DEWINE, J., concurred, with an opinion. FISCHER, J., dissented, with an opinion joined by STEWART, J.

**DONNELLY, J.**

## INTRODUCTION

**{¶ 1}** Appellant, Christopher R. Hicks, appeals from the denial of his public-records request for email- and mail-distribution lists for newsletters created by appellee, Union Township, Clermont County Board of Trustees ("the township"). The township asks us to affirm the judgment of the Twelfth District Court of Appeals denying Hicks's request. We hold that the information requested is a public record, and we therefore reverse the judgment of the court of appeals.

## FACTS AND PROCEDURAL HISTORY

**{¶ 2}** In January 2022, Hicks submitted a public-records request to the township requesting email- and mail-distribution lists for the township newsletter. The township denied Hicks's request, stating, "[N]either of the records that you requested document the activity and function of the Township" and therefore they "are not a public record."

**{¶ 3}** Hicks filed a complaint in the Court of Claims pursuant to R.C. 2743.75(D), asserting that the township denied him access to public records in violation of R.C. 149.43(B), the Public Records Act. In his complaint, Hicks alleged that the township uses mail and email to distribute newsletters to some or all addresses in the township and that the requested lists include no personal information. Therefore, according to Hicks, the distribution lists are records that document "the functions . . . or other activities of the office," R.C. 149.011(G), so they are subject to disclosure.

**{¶ 4}** The Court of Claims appointed a special master to decide the case. *See* R.C. 2743.75(A). Susan C. Ayers, the township administrator, attested that the township uses a third-party direct-mail vendor to send the newsletter to all township addresses. According to Ayers, that vendor assembles and maintains the list of addresses and ensures mailing of the newsletters. The township does not maintain

the list or otherwise use it. Additionally, according to Ayers's affidavit, the township's email-distribution list, which contains only names and email addresses, is used solely for the administrative purpose of sending the newsletter electronically.

{¶ 5} Hicks provided an affidavit from Gina DiMario, who edited and managed the township newsletter from 2005 to March 2022. DiMario asserted that the newsletters were "published as a government activity to provide the Union Township community with pertinent information from its governing body to its residents and businesses." Regarding the distribution lists, DiMario attested that mailings were based on a distribution list maintained by Cincinnati Print Solutions, the company responsible for printing the newsletter. The mailing list was maintained in conjunction with the local post office and was based on local zip codes. The newsletter was mailed to both residences and businesses. DiMario also stated that the email-distribution list was maintained by Brandon Miller, a township employee.

{¶ 6} Relying on DiMario's affidavit, Hicks argued that the email- and mail-distribution lists are part of the government's function to keep its constituents informed. Therefore, they are public records that must be made available in accordance with R.C. 149.43(B). Hicks adds that the "requested information is essential to the ability of Requester to understand and form a critique of a specific function of the government, staffed and paid for with tax dollars." He says that he seeks the lists to "evaluate the conduct of the newsletter program" and to learn who received the newsletter, whether some residents were omitted from the lists, whether some people received the newsletter by both mail and email, how "well-saturated" the email list is, and whether the email addresses on the distribution lists are "valid or bot accounts."

{¶ 7} In August 2022, the special master issued a report and recommendation, finding, "Hicks has not shown by clear and convincing evidence

that the requested township newsletter mailing or email lists meet the definition of a 'record.' " 2022-Ohio-3142, ¶ 10 (Ct. of Cl.)  Consequently, he held, the lists "are not governed by the Public Records Act."  *Id*.  The special master instead termed the lists "contact information used for administrative convenience in cost-effective communication to township residents, businesses, and other interested persons. . . .   [D]isclosure of the names and/or addresses of persons who automatically receive or have subscribed to the township newsletter would not further the purposes of the [Public Records] Act."  *Id*. at ¶ 9.

{¶ 8} Hicks objected to the special master's report and recommendation, contending that the special master erred when he classified the email list and mailing list as "administrative convenience," *id.*  He argued that the lists are public records that document "other activities" of the township, R.C. 149.011(G).

{¶ 9} In September 2022, the Court of Claims adopted the special master's report and recommendation, concluding that the email- and mail-distribution lists do not constitute "a public record subject to disclosure," because neither documents the "organization, functions, policies, decisions, procedures, operations, or other activities" of the township within the meaning of R.C. 149.011(G).  2022-Ohio-3558, ¶ 11 (Ct. of Cl.).  The court concluded that the lists represent contact information that the township uses as a matter of "administrative convenience," *id*. at ¶ 12, and denied Hicks's public-records request.

{¶ 10} Hicks timely appealed to the Twelfth District Court of Appeals pursuant to R.C. 2743.75(G)(1).  The court of appeals affirmed, holding that the lists contain contact information used solely "as a matter of convenience for distributing the newsletters," 2023-Ohio-874, ¶ 41 (12th Dist.), and do not document the functions or activities of the township.

{¶ 11} Hicks appealed, and we accepted jurisdiction over the following proposition of law:

4

Distribution lists (mail and email) curated for the recurring dissemination of government-approved messages, intended to influence public opinion, do document an "other activity" of a Public Office, and are not merely kept for "administrative convenience." They are a public record subject only to appropriate, statutorily supported, redaction.

*See* 2023-Ohio-2407.

## ANALYSIS

{¶ 12} In this discretionary appeal, we consider the relevance of administrative-convenience analysis to a public-records request for email- and mail-distribution lists for a township's newsletter. When a public-records case is appealed pursuant to R.C. 2743.75(G)(1), we review "the application of a claimed exemption de novo while according due deference to the trial court's factual determinations. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 39.

{¶ 13} A "public record" is a record kept by any public office. R.C. 149.011(G) includes as "records"

any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

Further, the "Public Records Act is to be 'construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records.' " *State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 7, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376 (1996).

**{¶ 14}** R.C. 9.03(B) permits "the governing body of a political subdivision [to] use public funds to publish and distribute newsletters, or to use any other means, to communicate information about the plans, policies, and operations of the political subdivision to members of the public within the political subdivision and to other persons who may be affected by the political subdivision." The parties agree that the township's newsletters qualify as public records subject to production upon request under the Public Records Act. This appeal, however, considers whether lists of mailing and email addresses to which the newsletters are distributed constitute a public record.

**{¶ 15}** To establish that the email and mail-distribution lists are records under R.C 149.011(G) and 149.43, Hicks must show by clear and convincing evidence that the distribution lists are "(1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the state agencies, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." *State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, ¶ 19. We conclude that the email- and mail-distribution lists at issue satisfy each requirement.

**{¶ 16}** The first two requirements are not contested. The distribution lists are "items" under R.C. 149.011(G), and the lists were created by and come under the jurisdiction of a public office, R.C. 149.43(A)(1). The mailing lists were created and retained at the direction of the township to disseminate its newsletters. The email lists were generated through a township website that allows interested users to subscribe to and unsubscribe from the newsletter's electronic distribution.

{¶ 17} We conclude that the distribution lists "come under the jurisdiction of" the township and "document the organization, functions, . . . procedures . . . or other activities of the office," R.C. 149.011(G), and are therefore public records covered by the Public Records Act. Here, the lists are not inconsequential administrative documents incidental to some primary function of the township, as suggested by the court of appeals in terming them "convenience," 2023-Ohio-874 at ¶ 41 (12th Dist.). Rather, the lists are central to connecting the township with its constituents, which is the purpose of a newsletter. Therefore, under R.C. 149.011(G), the distribution lists document particular functions and procedures of the township, revealing how and to whom the township's newsletter is regularly distributed. Given our obligation to construe these facts liberally in favor of broad access, we conclude that the email- and mail-distribution lists are public records under R.C. 149.011(G).

{¶ 18} We now address why the appellate court and Court of Claims erred in invoking administrative convenience as an exception to the Public Records Act. When a public office asserts an exception to disclosing a "record" that otherwise meets the definition of a "public record," the public office bears the burden of establishing the applicability of one of the exceptions delineated in R.C. 149.43(A). *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 2018-Ohio-5111, ¶ 7. Here, the township, special master, and lower courts contended that the lists represent contact information that the township uses solely as a matter of "administrative convenience," allowing them to conclude that Hicks's public-records request was appropriately denied.

{¶ 19} Though they are certainly convenient, the email- and mail-distribution lists are not mere "administrative conveniences" used for distributing the township's newsletter. The lists document the intention behind a regular practice of the township: the distribution of its newsletter.

**{¶ 20}** In *State ex rel. Cincinnati Enquirer v. Jones-Kelley,* 2008-Ohio-1770, ¶ 8, this court held that a database containing the names and addresses of foster caregivers is a public record under R.C. 149.011(G) because it documents the Ohio Department of Job and Family Services' activities in the certification of foster caregivers. Even though the addresses of foster caregivers in *Jones-Kelley* promoted administrative efficiency in the certification of caregivers, this court did not hold that the database fell within an exception. Here, Hicks requested the email- and mail-distribution lists to better understand and possibly critique "a specific function of government, staffed and paid for with tax dollars." Though the distribution lists assist an administrative function, they also allow citizens to "evaluate the conduct of the newsletter program," which is a function and activity of the township.

**{¶ 21}** There is no universal "address" exception found in the Public Records Act. The well-established goal of the Public Records Act is to promote transparency of the "organization, functions, policies, decisions, procedures, operations, and other activities" of public offices. R.C. 149.011(G) and 149.43(A)(1). Exceptions to it appear in R.C. 149.43(A), but "administrative convenience" is not among the exceptions listed.

## CONCLUSION

**{¶ 22}** The email- and mail-distribution lists used to disseminate the township newsletter serve to document a particular function, procedure, or activity of Union Township. Accordingly, the items requested should have been made available to Hicks. We reverse the judgment of the Twelfth District Court of Appeals and order that the requested records be made available to Hicks.

Judgment reversed

and cause remanded.

_____

**DEWINE, J., concurring.**

{¶ 23} I concur in the majority's opinion reversing the judgment of the Twelfth District Court of Appeals and ordering that the requested public records be made available. And I agree with the majority's determination that the lists in question serve to document a function of a public office. Based on the briefings of the parties below, the lists satisfy that statutory requirement. But I write separately to point out that because of the procedural posture of this case, our holding today is limited. Specifically, we do not determine whether a mailing list that is maintained by an outside vendor—like the one at issue in this case—satisfies the requirement of the Public Records Act that the record must be "kept" by a public office. R.C. 149.43(A)(1). Thus, our decision has no precedential force on that point.

*Background*

{¶ 24} Christopher R. Hicks filed a public-records request seeking information relating to a newsletter distributed by Union Township ("the township"). Specifically, Hicks sought an e-mail distribution list that was maintained by the township and a mailing list that was kept by an outside vendor. My focus in this separate opinion is on the mailing list.

{¶ 25} To qualify as a public record under Ohio's Public Records Act, R.C. 149.43, three elements must be established. The requesting party must show that the records in question are "(1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the state agencies, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." *State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, ¶ 19, citing R.C. 149.011(G).

{¶ 26} The township has relied on the third prong of this test throughout this case, maintaining that the lists do not constitute public records because they do not document the "organization, functions, policies, decisions, procedures, or

operations" of the township. With equal consistency, Hicks has maintained that the lists satisfy this prong. I agree with the majority that Hicks has the better of this argument.

**{¶ 27}** But, as I shall explain, that is as far as our decision today goes. Because the township has not challenged the Twelfth District's assumption that the second prong of the test—which I will refer to as the "ownership prong"—was satisfied, our decision today does not reach that issue.

*The Township Has Relied Solely on the Third Prong Throughout This Case*

**{¶ 28}** After Hicks sent his public-records request, the township relied on the third prong to deny the request: it asserted that the lists were not public records because they did not "document the activity and function" of the township. Hicks then filed a lawsuit in the Court of Claims alleging that the mailing lists constitute public records.

**{¶ 29}** The township responded to the lawsuit by again arguing that the records did not satisfy the third prong because the lists do not document the activities or functions of the township. It did not raise any argument about the ownership prong of the test.

**{¶ 30}** The Court of Claims ultimately ruled in favor of the township, adopting the decision of a special master. The Court of Claims concluded that the mailing lists were not public records because they did not document the "organization, functions, policies, decisions, procedures, operations, or other activities" of Union Township. 2022-Ohio-3558, ¶ 11 (Ct. of Cl.).

**{¶ 31}** Hicks appealed to the Twelfth District Court of Appeals, challenging the Court of Claims' decision that he had failed to satisfy the third prong of the statutory criteria. In response, the township again argued that the lists did not satisfy the third part of the test. The township could have asserted, as an alternative basis for affirming at least part of the judgment, that the mailing list did not satisfy the ownership prong of the test. *See* App.R. 3(C)(2) (A person who intends to

defend an order on a ground other than that relied on by the trial court . . . is not required to file a notice of cross-appeal or to raise a cross-assignment of error).  But it did not do so.

{¶ 32} Given the township's failure to raise the ownership issue on appeal, the Twelfth District gave the element only cursory treatment.  2023-Ohio-874 (12th Dist.)  After nominally discussing the quasi-agency test by which a litigant may satisfy the ownership prong, the court of appeals stated that the mailing list "arguably meets the second [prong]" because the township "had to be able to monitor the printer's performance and ensure mailing occurred before paying the printer for its services" since public funds were used to contract with the printer. *Id.* at ¶ 39-40.

{¶ 33} The court of appeals resolved the case under the third prong, concluding that Hicks had failed to establish that the lists document the "organization, functions, policies, decisions, procedures, operations or other activities" of Union Township.  *Id.* at ¶ 41.

{¶ 34} Hicks appealed the Twelfth District's ruling to this court, arguing that the court of appeals erred in its resolution of the third prong.  The township, again, devoted most of its briefing to the third prong.  It might also have argued that the decision of the court of appeals should be affirmed on the alternative basis that the ownership prong of the public-records test was not met.  *See State ex. rel. Yost v. FirstEnergy Corp.*, 2024-Ohio-101, ¶ 28 ("Generally, a party may defend a judgment based on any ground that was properly preserved below."); *see also State v. Bembry,* 2017-Ohio-8114, ¶ 11-12; *Couchot v. State Lottery Comm.*, 1996-Ohio-262, ¶ 20-21.  But it did not so.  Instead, in a section of its brief titled "Other Grounds for Affirming the Twelfth District," it identified three potential alternative grounds for affirmance. The ownership issue was not included in this list.

*The Majority Opinion Does Not Decide the Ownership Issue*

**{¶ 35}** Under the procedural posture of this case, the majority appropriately does not analyze the ownership issue. ("The first two requirements [of the test for a public record] are not contested."). Majority opinion, ¶ 16. "[O]ur judicial system relies on the principle of party presentation, and courts should ordinarily decide cases based on issues raised by the parties." *Epcon v. Wilcox Communities Franchising, L.L.C.,* 2024-Ohio-4989, ¶ 15; *see also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

**{¶ 36}** Because of the absence of analysis or briefing of the ownership issue, litigants and courts should not interpret this opinion to mean that similar facts necessarily satisfy the ownership requirement. Indeed, had the issue been properly raised, it seems to me at least an open question as to whether the mailing list satisfied the ownership requirement.

**{¶ 37}** To be a "public record," a record must be "kept by any public office." R.C. 149.43(A)(1). The ownership element is refined by R.C. 149.011(G), which defines "record" for purposes of the Public Records Act to include "any document, device, or item . . . created or received by or coming under the jurisdiction of any public office." We have also allowed these criteria to be established through an agency theory under which "'proof of a delegated public duty establishes that the documents relating to the delegated functions are public records.' " *State ex rel. Brown v. Columbiana Cty. Jail,* 2024-Ohio-4969, ¶ 18, quoting *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 2021-Ohio-1176, ¶ 16.

**{¶ 38}** Based on the limited record developed around the issue in this case, it is not clear whether the mailing list meets the ownership prong of the test for a public record. The township supplied an affidavit from Susan Ayers, the township administrator at the time. Hicks provided an affidavit from Gina DiMario, a former

township employee who edited and managed its newsletter from 2005 to March 2022.

{¶ 39} Ayers stated that the township "utilizes a third-party direct mail vendor that sends the newsletter" and is "responsible for assembling the list of addresses, maintaining the list, and ensuring that the newsletter is mailed to each of those addresses." At the same time, Ayers averred that the township does not do any of the above. In a closing sentence, Ayers stated that the mailing list kept by the printer does not document the "activity and function of the Township" and is "kept for the administrative purpose of sending out the newsletter" only.

{¶ 40} DiMario referred to the list as something "maintained by the printer in conjunction with the Post Office and based on local zip codes." DiMario also stated that Cincinnati Print Solutions "did the printing" and the Post Office "did the mailing," and that the newsletter was published "as a government activity to provide the Union Township community with pertinent information." As exhibits, Hicks also provided copies of purchase orders for the vendor's services and a job description for a media/communications manager.

{¶ 41} From these facts, it is unclear to me whether the mailing list falls "under the jurisdiction" of the township, R.C. 149.011(G). On one end of the spectrum, one can imagine situations where a local government contracts with a direct-mail vendor to send newsletters to a designated geographic area without any further involvement in the maintenance of the list. In such a situation, the township would seem little different than a local restaurant, oil-change service, or political candidate who contracts for such services. One would be hard pressed under that scenario to say that the mailing list fell "under the jurisdiction," R.C. 149.011(G), of the local government. Indeed, in that instance, the mailing list would seem no more a public record than a list of subscribers maintained by a cable-television company or a newspaper from which a local government had purchased advertising.

**{¶ 42}** At the opposite end of the spectrum, one can imagine situations where a direct-mail vendor curates and maintains a distinct list at the behest of and with the active involvement of a local government. Under those circumstances, there would be a much stronger argument that the list satisfies the ownership prong of the public-records statute. Based on the record before us, it is impossible to tell where the mailing list at issue falls on these two ends of the spectrum.

*Conclusion*

**{¶ 43}** I concur in the majority's opinion reversing the judgment of the Twelfth District Court of Appeals. The majority correctly determines that the lists in question document a function, procedure, or activity of Union Township. Because the ownership issue was not advanced by the township as an alternative basis for affirming the judgment below, the majority correctly does not analyze that matter. Its opinion, therefore, is not precedential on that issue.

––––––––––––––––

**FISCHER, J., joined by STEWART, J., dissenting.**

**{¶ 44}** I respectfully dissent. I would conclude that the distribution lists at issue in this case do not document the "organization, functions, policies, decisions, procedures, operations, or other activities" of appellee, Union Township, Clermont County Board of Trustees, *see* R.C. 149.011(G), and that the Twelfth District Court of Appeals reached the correct conclusion in its decision below.

**{¶ 45}** The majority opinion relies on *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770. In *Jones-Kelle*y, this court concluded that the Ohio Job and Family Services ("ODJFS") department's database containing names and addresses of foster caregivers is a public record because "maintaining a record of names and addresses of foster caregivers is part of the department's duty in certifying foster caregivers." *Id.* at ¶ 7. Aside from this statement, *Jones-Kelley* offers no analysis concerning whether that database is a public record and instead

focuses the bulk of its analysis on whether any exceptions from disclosure are applicable.

**{¶ 46}** *Jones-Kelley* is not on all fours with this case, as the maintenance of a foster-caregiver database is part of a statutory function of ODJFS. ODJFS, for instance, is tasked with administering federal payments for foster care, *see* R.C. 5101.141(B)(1), and the maintenance of a caregiver database documents that function and operation. Here, however, the distribution lists in question fail to document any actual "organization, functions, policies, decisions, procedures, operations, or other activities" of the township, R.C. 149.011(G).

**{¶ 47}** In my view, *State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, presents a more appropriate analysis. In *Johnson*, this court concluded that lists of the home addresses of state employees were not public records. *Id.* at ¶ 52. In so holding, the court explained that the release of those addresses "would not reveal anything to shed light on the conduct of state government." *Id.* In its analysis, the *Johnson* court noted that "any state-agency policy requiring that its employees provide and update their home addresses would document a policy and procedure of a public office, but the home addresses themselves would not do so." *Id.* at ¶ 26.

**{¶ 48}** In this case and in *Johnson*, the lists in question have no connection to the conduct of state government. As suggested in *Johnson*, a township policy delineating the procedures for creating and maintaining a distribution database may document a procedure of a public office, but the home addresses themselves do not do so. Following *Johnson*, I would hold that the distribution lists at issue here are not public records. *See also State ex rel. McCleary v. Roberts*, 2000-Ohio-345, ¶ 17 (concluding that lists of users of a city pool do not document any "organization, functions, policies, decisions, procedures, or operations," R.C. 149.011(G), of the city's parks and recreation department and are therefore not public records); *State ex rel. Beacon Journal Publishing Co. v. Bond*, 2002-Ohio-7117, ¶ 11-13

(concluding that lists of names and addresses of prospective and impaneled jurors are not public records, because the lists serve an administrative purpose and do not document the activity and function of the court).

**{¶ 49}** For these reasons, I respectfully dissent and would affirm the judgment of the Twelfth District Court of Appeals.

_____

Christopher R. Hicks, pro se.

Bricker Graydon and Brodi J. Conover, for appellee.

The Buckeye Institute, David C. Tryon, and Alex M. Certo, urging reversal for amicus curiae The Buckeye Institute.

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, and Jana M. Bosch, Deputy Solicitor General, urging affirmance for amicus curiae Attorney General of Ohio.

Frost Brown Todd, L.L.C., and Charles B. Galvin, urging affirmance for amici curie Ohio Township Association, Coalition of Large Ohio Urban Townships, Ohio Municipal League, County Commissioners Association of Ohio, Ohio Library Council, Ohio School Boards Association, Ohio Association of School Business Officials, and Buckeye Association of School Administrators.

_____