**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Platt v. Montgomery Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-2079.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2079

THE STATE EX REL. PLATT *v.* MONTGOMERY COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Platt v. Montgomery Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-2079.]**

*Mandamus—Public-records requests—Requested email county prosecutor's office sent county board of elections that merely transmitted confidential legal memorandum is not itself protected by attorney-client privilege and therefore not exempt from disclosure under R.C. 149.43(A)(1)(v)—Requested email board's deputy director sent from his board email account to his personal email account is a public record subject to disclosure because it documented a board activity by recording board's receipt of memo from prosecutor's office—A record that documents activity of a public office is a public record within meaning of R.C. 149.011(G) regardless of whether it documents authorized or unauthorized activity—Requested email deputy director sent from his personal email account forwarding memo to chairman of county Democratic Party is not a public record within meaning of R.C. 149.43(A)(1)*

*because email account is not maintained by board—Writ granted in part and denied in part— Relator awarded $1,000 in damages, relator's request for court costs granted, and relator's request for attorney fees granted subject to submission of itemized application.*

(No. 2024-0325—Submitted April 1, 2025—Decided June 17, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred in part and dissented in part and would not award statutory damages.

**Per Curiam.**

{¶ 1} In this original action, relator, Joseph J. Platt, seeks a writ of mandamus to compel respondents, the Montgomery County Board of Elections ("the board") and its deputy director, Russell M. Joseph, to produce several emails in response to a public-records request Platt's counsel sent on his behalf. Platt also seeks to compel the board to organize and maintain public records in a manner by which they can be made available for inspection or copying. Finally, Platt demands awards of statutory damages, court costs, and attorney fees.

{¶ 2} We grant a writ of mandamus ordering respondents to produce two emails Platt seeks and deny the writ in all other respects. We also award Platt his court costs and $1,000 in statutory damages. Finally, we grant Platt's request for his attorney fees, subject to his submission of an itemized application.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Ballot Protest Leads to Public-Records Request

{¶ 3} In December 2023, Mary McDonald filed a petition and declaration of candidacy with the board, seeking placement on the March 2024 primary-election ballot as a Republican candidate for a seat on the Montgomery County

Board of Commissioners. McDonald was the only person to file a declaration of candidacy to be a Republican candidate for that seat.

{¶ 4} In January 2024, Mohamed Al-Hamdani and Brenda Blausser filed a protest with the board, challenging McDonald's certification for placement on the primary-election ballot. Al-Hamdani is the chairman of the Montgomery County Democratic Party and a partner at the law firm Flanagan, Lieberman & Rambo. The protesters alleged that McDonald was not qualified to be on the Republican-primary ballot, because she was a duly elected member of the Montgomery County Democratic Party Central Committee and had not resigned from that office. The protesters also alleged that McDonald had not complied with other statutory requirements for declaring her intent to seek nomination as a Republican candidate for another office.

{¶ 5} The board held a hearing on the protest. Attorney Don McTigue represented the protesters at the hearing. During the hearing, McTigue referred to a "legal memorandum from the county prosecutor's office" ("the memo") that he told the board he had received from Dennis Lieberman. Lieberman is a lawyer and, like Al-Hamdani, a partner at Flanagan, Lieberman & Rambo. He is also the husband of Debbie Lieberman, who at that time held the commissioner seat to which McDonald was seeking election. If the protest against McDonald's Republican candidacy were successful, Debbie Lieberman would have been an unopposed incumbent candidate for her commissioner seat in the November 2024 general election.

{¶ 6} Jeff Rezabek, the board's director, stated at the protest hearing that the memo is a legal opinion the board had requested and is therefore protected by the attorney-client privilege. Rezabek further stated that the board had not waived the attorney-client privilege or otherwise authorized the disclosure of the memo to a third party, and he requested a full investigation into who had leaked the memo. Platt contends that the "leaking" of the memo "to operatives of the Montgomery

County Democratic Party" was part of an effort to keep McDonald from challenging Debbie Lieberman for her commissioner seat in the general election.

{¶ 7} After the protest hearing,[1] the board ordered an investigation into the unauthorized distribution of the memo. The investigation found that on January 10, 2024, the Montgomery County Prosecutor's Office sent the memo by email to the four board members, the board's director (Rezabek), and its deputy director (Joseph). Shortly after receiving the email from the prosecutor's office, Joseph forwarded the email—with the memo attached—to his personal email account. Joseph then forwarded the memo from his personal email account to Al-Hamdani. Al-Hamdani received the memo from Joseph on January 10 and forwarded it to Dennis Lieberman, who then forwarded it to McTigue.

## B. The Public-Records Request

{¶ 8} On February 2, 2024, attorney Curt Hartman (who is Platt's counsel of record in this case) emailed a public-records request to Rezabek. The request asked for

> all emails (including emails on non-governmental accounts), from
> January 10, 2024, to the present, to or from any member of the
> Montgomery County Board of Elections, or to or from the director
> or deputy director of the Montgomery County Board of Elections,
> wherein the foregoing-referenced "legal memorandum from the
> county prosecutor's office" dated January 10, 2024, was sent or

---

1. The board deadlocked two-to-two on the protest to McDonald's candidacy. The secretary of state cast the tie-breaking vote to deny the protest, allowing McDonald to run in the March 2024 primary election as a Republican candidate for Debbie Lieberman's commissioner seat. Ohio Secretary of State, *Ohio Secretary of State Week in Review for the Week Ending February 2, 2024*, https://www.ohiosos.gov/media-center/week-in-review-archive/2024-02-02/ (accessed May 23, 2025) [https://perma.cc/2R5Z-ZV9H]. McDonald was elected county commissioner in the November 2024 general election, defeating Lieberman. Montgomery County Board of Elections, *Election Results*, https://www.montgomery.boe.ohio.gov/election-results/#281-665-2024-election-results (page 4 of "11052024es final with write-ins" download) (accessed May 23, 2025).

received. Within the scope of the request would be emails documenting the receipt of the legal memorandum and any distribution of the legal memorandum, including to Dennis Lieberman or any person with the law firm of Flanagan, Lieberman & Rambo.

The request noted that it did "not seek the 'legal memorandum' itself, either as an attachment to any email or otherwise."[2]

{¶ 9} Rezabek responded to the public-records request on February 20, 2024. Regarding the request for emails transmitting or sending the memo, Rezabek stated, "The documents you seek are either covered by the Attorney/Client privilege or that we have none responsive to your request, and/or the Montgomery County, OH Board of Elections does not have access to."

{¶ 10} Within an hour of receiving the response to the public-records request, Hartman sent Rezabek a follow-up email in which he clarified that "emails by which the memorandum was initially sent or received by the Board members" would be responsive to the request. "[A]t a minimum," Hartman added, he "would anticipate responsive records to include" the initial transmission of the memo from the prosecutor's office to Rezabek, Joseph, the board, and/or its individual members or the distribution of the memo from Rezabek or Joseph to the board.

{¶ 11} Rezabek responded to Hartman's follow-up email two days later, indicating that he had "misread" the public-records request as asking for emails sent between the prosecutor's office (i.e., the board's legal counsel) and the board and that such emails would be subject to the attorney-client privilege. Understanding

---

2. Hartman also requested all emails sent since December 20, 2023, to or from certain board members, Al-Hamdani, Dennis Lieberman, Debbie Lieberman, or the Flangan, Lieberman & Rambo law firm concerning either McDonald's candidacy or any protest to her candidacy. Those requests are not at issue in this action.

the request as asking for only "emails between the Director/Deputy Director and the Board Members concerning the legal memorandum," Rezabek stated, "[W]e have none responsive to your request, and the Montgomery County, OH, Board of Elections does not have access to documents that could be responsive to your request."

{¶ 12} Hartman followed up again, informing Rezabek by email that Rezabek was still mistaken about the public-records request. Hartman repeated that the request "does seek the initial transmission of the legal memorandum from the prosecutor's office to either you, the deputy director, and/or directly to the Board Members" as well as any email forwarding the memo to someone else. Hartman also emphasized that any emails forwarding the memo to or from a personal email account would constitute a responsive record. In response, Rezabek stated, "I do not have access to what you are requesting." Rezabek added that "[s]ome of the confusion" could be attributed to the fact that the board does "not host [its] email system; it is hosted through the Secretary of State's office."

{¶ 13} In an affidavit submitted with respondents' evidence in this case, Rezabek attests that the board uses an email server that is managed and maintained by the secretary of state, as permitted by Ohio Secretary of State Directive 2019-08. Directive 2019-08 also states: "No board of elections' member, director, deputy director, or employee is permitted to use an email address from an email service provider (e.g., gmail, yahoo, Hotmail, etc.) . . . to conduct board of elections official business."

### C. Platt Commences this Action

{¶ 14} Platt filed this original action in March 2024, naming the board and Joseph as respondents. He seeks a writ of mandamus ordering respondents to comply with their legal duties under the Public Records Act, R.C. 149.43, specifically to produce all "emails whereby the *Legal Memorandum* was sent or received (including being received or sent on the private email account of

RUSSELL JOSEPH),” to provide legal authority for denying in whole or in part the public-records request, and to organize and maintain public records in a manner by which they can be made available for inspection or copying. (Italics and capitalization in original.) Platt also seeks awards of statutory damages, court costs, and attorney fees.

**{¶ 15}** Respondents filed a motion to dismiss, arguing that the case was moot because they had responded fully to the public-records request and had otherwise complied with the requirements of the Public Records Act. We denied the motion to dismiss and granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2024-Ohio-3227. We also ordered respondents to file under seal, for in camera inspection, unredacted copies of the documents withheld on attorney-client-privilege grounds. *Id.* Respondents complied with our order.

## II. ANALYSIS

### A. Mandamus Claim Seeking Production of Emails

**{¶ 16}** R.C. 149.43(B)(1) requires a public office to make copies of public records available to the requester at cost and within a reasonable period of time. A writ of mandamus is an appropriate remedy to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b). The requester must establish by clear and convincing evidence a clear legal right to the records and a corresponding clear legal duty on the part of the respondent to provide them. *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10.

**{¶ 17}** Platt’s briefing focuses on three emails sent on January 10, 2024, that the board’s investigative report refers to:

(1) the email sent from the prosecutor’s office to the board members, Rezabek, and Joseph that transmitted the memo concerning the protest to McDonald’s candidacy;

(2) the email Joseph sent from his board email account forwarding the memo to his personal email account; and

(3) the email Joseph sent from his personal email account forwarding the memo to Al-Hamdani.

{¶ 18} To establish that the requested emails are public records under R.C. 149.011(G) and 149.43(A)(1), Platt must show by clear and convincing evidence that the emails are "(1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the state agencies, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office," *State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, ¶ 19. To be a public record, a record must be kept by a public office. R.C. 149.43(A)(1).

### 1. Email from Prosecutor's Office to the Board

{¶ 19} Respondents argue that the email the prosecutor's office sent the board members, Rezabek, and Joseph on January 10, 2024, is a communication covered by the attorney-client privilege. In Ohio, the attorney-client privilege exists as both a testimonial privilege under R.C. 2317.02(A) and a common-law privilege that shields from disclosure any information obtained in the confidential attorney-client relationship. *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 2011-Ohio-6009, ¶ 27. "Under the attorney-client privilege, '(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.' " *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 2005-Ohio-1508, ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir. 1998).

{¶ 20} R.C. 149.43(A)(1)(v) exempts from disclosure records "the release of which is prohibited by state or federal law." The attorney-client privilege is a state law prohibiting release of otherwise public records. *State ex rel. Lanham v. DeWine*,

2013-Ohio-199, ¶ 26. Platt argues, however, that respondents have not met their burden to prove that the email transmitting the memo was a communication protected by the attorney-client privilege. By seeking only the emails *transmitting* the memo but not the memo itself, Platt argues, he "was clearly avoiding seeking that which would *arguendo* be protected by attorney-client privilege." (Italics in original.)

{¶ 21} On the one hand, this court has held that the attorney-client privilege "does not require that the communication contain purely legal advice." *Id.* at ¶ 29. But we have also noted that "'if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged.'" *Id.*, quoting *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). Thus, in *Lanham*, we held that documents gathered by an assistant attorney general as part of his investigation into a matter in which he was advising his client were protected by the attorney-client privilege. *Id.* at ¶ 31. In this case, the communication at issue is an email the prosecutor's office sent to its clients (i.e., the members, director, and deputy director of the board) that attached a confidential memorandum providing legal advice. Under a strict reading of *Lanham*, the email is a communication that facilitated the rendition of legal advice given by the prosecutor's office to the board and would therefore fall under the attorney-client privilege.

{¶ 22} However, our in camera review of the email the prosecutor's office sent to the board shows that the legal advice provided by the prosecutor's office is contained in the memo attached to the email and not in the email itself. Though the parties cite no Ohio cases related to the privileged nature of emails that merely transmit privileged documents from one person to another, federal district courts have determined that transmittal documents themselves are not necessarily privileged. *See, e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79 (S.D.N.Y. 2010) (transmittal emails not privileged unless they reveal client confidences); *Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336 (M.D.Pa. 2013) (transmittal messages forwarding litigation documents without comment were not privileged even though

some documents attachment to the messages were potentially privileged); *Community Assn. Underwriters of Am. v. Queensboro Flooring Corp.*, 2014 WL 4165385, *5 (M.D.Pa. Aug. 20, 2014) (transmittal messages with a brief note directing to "please advise" or "see attached" were not privileged even though some documents attached to the messages were potentially privileged); *La Liberte v. Reid*, 2024 WL 22781, *3 (E.D.N.Y. Jan. 2, 2024) ("transmittal emails that enclose or attach other documents[] without further substantive comment" are not privileged).

{¶ 23} To be sure, federal decisions do not bind this court in matters concerning the attorney-client privilege. *State ex rel. Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2024-Ohio-5063, ¶ 21. However, the aforementioned decisions are helpful in analyzing the communications at issue in this case. *See id.* (applying a federal decision as "helpful guidance" in analyzing arguments regarding applicability of the privilege). Applying the rule from these cases, the transmittal email that the prosecutor's office sent to the board is not privileged. The email did not reveal any client confidences or contain any substantive text relating to the legal advice from the prosecutor's office to the board.

{¶ 24} To be sure, the subject line of the transmittal email discloses the matter to which the legal advice contained in the attachment pertains (i.e., the protest to McDonald's candidacy). But that fact does not make the email privileged. Nor does the subject line require redaction. *See State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 35-37 (privileged portions of otherwise public record were properly redacted in response to public-records request). The fact that the prosecutor's office transmitted the memo to the board on January 10, 2024, was already known. Indeed, the public-records request asked for the email by which the memo had been transmitted. Accordingly, on the facts of this case, even the subject line of the transmittal email from the prosecutor's office does not reveal any privileged information.

**{¶ 25}** Accordingly, we order the board to disclose the transmittal email that the prosecutor's office sent to the board members, Rezabek, and Joseph on January 10, 2024. The email merely transmitted the memo from the prosecutor's office and does not reveal client confidences; it therefore is not privileged. *See, e.g.*, *Gucci Am.* at 79.

### 2. Email to Joseph's Personal Email Account

**{¶ 26}** Just 23 minutes after receiving the email from the prosecutor's office with the memo attached, Joseph forwarded the email—along with the memo—to his personal email account. The board submitted to this court a copy of Joseph's email under seal for in camera inspection, as we had ordered. The email contained no text in the message section; it simply transmitted the email Joseph had received from the prosecutor's office, along with the attached memo, to Joseph's personal email account. Joseph's personal email address was the only addressee in the communication.

**{¶ 27}** Platt does not argue that Joseph, as deputy director of the board, is outside the purview of the attorney-client relationship. Nor does Platt argue that the board waived the attorney-client privilege before Joseph forwarded the email from the prosecutor's office or that Joseph could have unilaterally waived the privilege. *See, e.g.*, *Watson v. Cuyahoga Metro. Hous. Auth.*, 2014-Ohio-1617, ¶ 34 (8th Dist.) (individual employees lacked authority to waive a privilege held by their employer).[3] Thus, it would appear that Joseph's blank email forwarding the memo from his board email account to his personal email account did not waive the attorney-client privilege with respect to the memo. *See Jacobs v. Equity Trust Co.*, 2020-Ohio-6882, ¶ 27 (9th Dist.).

**{¶ 28}** In their merit brief, however, respondents do not argue that the email Joseph sent to his personal email account is covered by the attorney-client privilege.

---

3. The board later voted to waive the attorney-client privilege with respect to the memo itself but not to other communications.

We therefore deem respondents to have waived such an argument. *See State ex rel. O'Neill v. Athens Cty. Bd. of Elections*, 2020-Ohio-1476, ¶ 32 (the respondent waived defense by presenting no argument regarding the defense in its merit brief). Moreover, as noted above, blank transmittal emails are not privileged when they do not contain client confidences. *Gucci Am.*, 271 F.R.D. at 79; *but see Jacobs* at ¶ 27.

{¶ 29} Instead of relying on the attorney-client privilege, respondents argue that the email Joseph sent to himself is not a public record. For purposes of the Public Records Act, the term "record" is defined as including "any document, device, or item, regardless of physical form or characteristic, . . . created or received by or coming under the jurisdiction of any public office . . . which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). Emphasizing the statutory definition, respondents contend that Joseph's email is not a "record" because it "does not serve to document the public business of the Board of Elections." Indeed, they note that it is actually contrary to the deputy director's duties to send emails to his personal email account; in fact, the board considered taking disciplinary action against Joseph and ultimately added a "letter of counselling" to his personnel file and required him to undergo public-records training.

{¶ 30} Nevertheless, we hold that the email Joseph sent from his board email account to his personal email account on January 10, 2024, is a public record subject to disclosure under the Public Records Act. Though the evidence demonstrates that Joseph was not authorized to forward the email sent by the prosecutor's office and the attached memo to Joseph's personal email account, this does not mean that the email is not a "record" as defined by R.C. 149.011(G). Whether authorized or not, the email documented an activity of the board by recording the board's receipt of a memorandum from the prosecutor's office providing legal advice that the board had requested. Under the statutory definition of "public record," a record that documents

the activity of a public office is a public record regardless of whether it documents authorized or unauthorized activity of that office. And in this case, Joseph's forwarding of a confidential memorandum *from his board email account*, though unauthorized, documents an activity of the board.

**{¶ 31}** Accordingly, we order respondents to disclose the email Joseph sent from his board email account to his personal email account on January 10, 2024, as a public record.

### 3. Email from Joseph's Personal Email Account

**{¶ 32}** Platt also seeks the email Joseph sent on January 10, 2024, from his personal email account by which he forwarded the memo to Al-Hamdani, the chairman of the Montgomery County Democratic Party. Respondents argue that this email is not a public record and that they were therefore under no obligation to produce it. As to this email, we agree with respondents.

**{¶ 33}** Email messages are records for purposes of the Public Records Act if they were "created or received by or coming under the jurisdiction of [a] state agenc[y]" and "serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." *Dispatch Printing Co.*, 2005-Ohio-4384, at ¶ 19; *accord State ex rel. Glasgow v. Jones*, 2008-Ohio-4788, ¶ 20. In this case, Platt has not offered evidence indicating that the email sent from Joseph's personal email account was created by the board or fell under its jurisdiction.

**{¶ 34}** Platt argues that by leaking a privileged document for partisan political purposes Joseph committed "malfeasance or misfeasance in office" and that any emails documenting that malfeasance or misfeasance are public records that must be disclosed. Because public records "are one portal through which the people observe their government," *Kish v. Akron*, 2006-Ohio-1244, ¶ 16, Platt contends, it is imperative for the public to be able to view any records showing when government officials violate the law or otherwise engage in mischief in their duties. Indeed, as

previously noted, records kept by a public office that reveal misconduct or malfeasance by a public official are fairly characterized as public records under R.C. 149.011(G) and 149.43(A)(1).

{¶ 35} The email sent from Joseph's personal email account, however, stands on footing different from the email sent from his board email account. Platt's policy arguments notwithstanding, a record is not a *public* record unless it is "kept by any public office," R.C. 149.43(A)(1). Joseph sent the email to Al-Hamdani from his personal email account, and there is no evidence in the record showing that Joseph's personal email account is maintained by the board.

### B. Mandamus Claim for Organizing and Maintaining Records

{¶ 36} As a separate prayer for relief, Platt asks that the board be ordered "to organize and maintain" its public records "in a manner [such] that they can be made available for inspection or copying." This claim relates to Rezabek's representation that the secretary of state's office hosts the board's email system and that the board therefore lacks access to the records requested. In denying the public-records request Platt's counsel sent, in addition to raising the attorney-client privilege, Rezabek indicated that the board did "not have the documents that are responsive to [the] request" because the secretary of state's office hosts the board's email system.

{¶ 37} Platt argues that if the board lacks access to its own records, it is violating the Public Records Act and a writ of mandamus should issue to order it to maintain its records in such a manner as would allow it to comply with the act. In defense of their withholding of the requested records at issue, however, respondents do not claim that the board lacked access to the records. Respondents argue only that the requested records are either protected from disclosure by the attorney-client privilege or are not public records at all and that the board has therefore complied fully with its obligations with respect to the requested records at issue. Other than Rezabek's email and affidavit explaining that the secretary of state's office maintains

14

the board's email system, there is no evidence indicating that the board lacks access to its records.

{¶ 38} Platt has not proved by clear and convincing evidence that the board does not organize and maintain its records in a manner that makes them available for inspection and copying. Indeed, the evidence of record belies Platt's claim: respondents submitted as evidence not only the emails at issue in this case (under seal for in camera inspection) but also other emails sent to and from Rezabek's board email account. Accordingly, we deny the writ as to this claim.

### C. Statutory Damages and Court Costs

{¶ 39} Under R.C. 149.43(C)(2),[4] a public-records requester is entitled to statutory damages if (1) he sent a public-records request by one of the statutorily prescribed methods, (2) he made the request "to the public office or person responsible for the requested public records," (3) he fairly described the documents being requested, and (4) the public office or person responsible failed to comply with an obligation under R.C. 149.43(B). Here, Platt's counsel sent the public-records request at issue by email to Rezabek and has attested that he did so on Platt's behalf. There is no dispute that the request was properly made to the board or that the request fairly described the records sought.

{¶ 40} As for the last requirement for statutory damages, we have determined above that the board failed to comply with R.C. 149.43(B) by withholding the email from the prosecutor's office transmitting the memo to the board and the email from Joseph's board email account in which he forwarded the memo to his personal email account. Platt has therefore established his entitlement to statutory damages under R.C. 149.43(C)(2). *See State ex rel. Ware v. Akron*, 2021-Ohio-624, ¶ 18 (statutory damages "are mandatory" when a public-records custodian has failed to comply with

---

4. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

an obligation under R.C. 149.43(B)). And because more than ten days have passed since this action was filed, we award Platt the maximum $1,000 in statutory damages. *See* R.C. 149.43(C)(2).

{¶ 41} Platt is also entitled to recover his court costs. Because we grant a writ of mandamus ordering production of the aforementioned emails, an award of court costs is mandatory under R.C. 149.43(C)(3)(a)(i).

### D.  Attorney Fees

{¶ 42} Platt also seeks recovery of his attorney fees. "If the court renders a judgment that orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)] . . . , the court may award reasonable attorney's fees to the relator . . . ." R.C. 149.43(C)(3)(b). In this case, Platt has met the prerequisite for an attorney-fees award under that provision because we are granting a writ of mandamus ordering respondents to provide him with copies of the email by which the prosecutor's office transmitted the memo to the board and the email in which Joseph forwarded the memo to his personal email account.

{¶ 43} Respondents make two arguments in opposition to Platt's attorney-fees request. First, they contend that the board has not violated the Public Records Act. But as explained above, the board failed to comply with R.C. 149.43(B) by withholding the two emails that we are ordering it to produce.

{¶ 44} Second, respondents argue that attorney fees are not warranted because the board did not act in bad faith. Citing R.C. 149.43(C)(3)(b)(iii), respondents argue that an award of attorney fees *requires* a finding of bad faith. This argument fails because respondents are misreading the statute. R.C. 149.43(C)(3)(b) provides that an attorney-fees award is appropriate if the court orders a public office to comply with R.C. 149.43(B) *or* "if the court determines any of the following," including bad faith. Moreover, the "bad faith" provision comes into play only when the record was produced after the requester filed a mandamus action but before the court rendered a judgment. R.C. 149.43(C)(3)(b)(iii). In this case, attorney fees are

appropriate because the board failed to comply with R.C. 149.43(B) by withholding the two emails that we are ordering it to produce. *See Brinkman*, 2024-Ohio-5063, at ¶ 41 (awarding attorney fees for failure to comply with obligation under R.C. 149.43(B)).

{¶ 45} Accordingly, we conclude that an award of attorney fees is warranted. We defer our final determination of the amount of attorney fees pending Platt's filing of an itemized application in accordance with the standards set forth in *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5110, ¶ 35-36. Respondents are permitted to respond to Platt's application. *Id.* at ¶ 35.

### III. CONCLUSION

{¶ 46} For the foregoing reasons, we grant a writ of mandamus ordering respondents to provide to Platt copies of the email that the prosecutor's office sent to the board members, Rezabek, and Joseph on January 10, 2024, and the email Joseph sent from his board email account to his personal email account on that date. We deny the writ in all other respects. We order respondents to pay $1,000 in statutory damages to Platt, and we award Platt his court costs. Finally, we grant Platt's request to recover his reasonable attorney fees. Platt shall submit his itemized fee application within 20 days, and respondents may file a response within 14 days of the filing of Platt's application.

Writ granted in part
and denied in part.

———————————

The Law Firm of Curt C. Hartman and Curt C. Hartman; and Finney Law Firm and Christopher P. Finney, for relator.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Ward C. Barrentine and Nathaniel S. Peterson, Assistant Prosecuting Attorneys, for respondents.

———————————