[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Boddy v. Xenia Community City School Dist. Bd. of Edn.*, Slip Opinion No. 2026-Ohio-164.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-164

THE STATE EX REL. BODDY *v.* BOARD OF EDUCATION OF XENIA COMMUNITY CITY SCHOOL DISTRICT ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Boddy v. Xenia Community City School Dist. Bd. of Edn.*, Slip Opinion No. 2026-Ohio-164.]

*Public-records requests—Mandamus—E-mail distribution list that relator requested is a public record as defined in R.C. 149.011(G) because it is an item created by school district that documents its functions and procedures—*State ex rel. Dispatch Printing Co. v. Johnson *distinguished—School district failed to satisfy its burden to prove that list falls squarely within "state or federal law" exemption from disclosure requirement of Public Records Act—Writ granted and relator awarded court costs, reasonable attorney fees, and $1,000 in statutory damages.*

(No. 2025-0262—Submitted October 28, 2025—Decided January 22, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred but would not award relator statutory damages.

**Per Curiam.**

{¶ 1} In this original action, relator, Darbi Boddy, requests a writ of mandamus ordering respondents, the Xenia Community City School District's ("XCCSD") board of education and the XCCSD's treasurer, Thomas Massie (collectively, "the school district"), to produce a record Boddy requested under Ohio's Public Records Act, R.C. 149.43. The record at issue is an email-distribution list used to disseminate a newsletter from the XCCSD's superintendent to the XCCSD community. The school district denied Boddy's request for the list, asserting that it is exempt from the Public Records Act's disclosure requirement because it contains protected student information, the release of which is prohibited by state and federal law.

{¶ 2} Because the email-distribution list is a public record, *see Hicks v. Union Twp. Clermont Cty. Bd. of Trustees*, 2024-Ohio-5449, and the school district has failed to establish that a disclosure exemption applies, we grant a writ of mandamus ordering the school district to produce the list, from which it must redact all personally identifiable information that is protected from disclosure under the Ohio Student Privacy Act ("OSPA"), R.C. 3319.321, and the federal Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g. We also award Boddy statutory damages, court costs, and attorney fees.

{¶ 3} In addition, the school district filed two motions for leave to resubmit its presentation of evidence and a "motion to retrieve attorney client privileged materials." For the reasons that follow, we grant the first motion for leave, deny the second motion for leave, and deny the motion to retrieve attorney-client-privileged materials.

## I.  BACKGROUND

### A.  Boddy's Public-Records Request and the School District's Response

{¶ 4} Boddy is a former member of the board of education of the Lakota Local School District.  Without disclosing Boddy's name, Boddy's counsel submitted a public-records request to the school district by email in December 2024, asking for various records related to a newsletter the XCCSD's superintendent sent by email to the XCCSD community in October 2024.  One of the records Boddy requested was the email-distribution list that had been used to distribute the newsletter.  In her mandamus complaint, Boddy sets forth facts showing that the newsletter was emailed primarily to parents of XCCSD students and that the XCCSD has about 4,000 students, thus implying that the list primarily contains the email addresses of parents of students enrolled in the XCCSD.

{¶ 5} The school district denied Boddy's request for the email-distribution list by email, providing two reasons: (1) the list is not a "record" as defined in R.C. 149.011(G), because it does not document the organization, functions, policies, decisions, procedures, operations, or other activities of the school district, and (2) even if the list were a public record, it contains personally identifiable student information and is therefore exempt from disclosure under the OSPA and FERPA.

### B.  Boddy's Mandamus Action

{¶ 6} Boddy filed this mandamus action in February 2025, seeking a writ of mandamus compelling the school district to produce the email-distribution list; she also asks for awards of statutory damages, attorney fees, and court costs.[1]  After the school district filed an answer, we granted an alternative writ, setting a schedule for the presentation of evidence and briefs.  *See* 2025-Ohio-1613.  In addition, we ordered the school district to submit the email-distribution list under seal for in

---

1. The General Assembly has recently amended R.C. 149.43, most notably in 2024 Sub.H.B. No. 265 (effective Apr. 9, 2025), and some provisions have been renumbered.  This opinion applies the version of the statute enacted in 2024 Sub.S.B. No. 29 (effective Oct. 24, 2024).

camera inspection. *Id.* We also permitted the school district to file under seal any other evidence that may contain protected student information. *Id.*

{¶ 7} Both parties submitted evidence. Boddy's evidence consists solely of the transcript of a hearing held in a federal case in which she alleges that her rights under the First Amendment to the United States Constitution were violated during a meeting of the XCCSD's board of education.[2] The school district's evidence consists of the affidavits of the XCCSD's treasurer, who is its public-records custodian, and the XCCSD's superintendent. Two exhibits are attached to the treasurer's affidavit: the email from Boddy's counsel conveying Boddy's public-records request and two emails that the school district's counsel sent to the superintendent in which counsel proposed a draft response and discussed the merits of the public-records request, applicable caselaw, and the school district's potential financial exposure.

## C. The School District's Motions for Leave to Resubmit Evidence and Motion to Retrieve Attorney-Client-Privileged Materials

{¶ 8} A week after the parties filed their evidence, the school district filed a motion for leave to resubmit its evidence, with revised evidence attached. In this motion, the school district does not seek to remove from its evidence the two emails and draft response that the school district's counsel sent to the superintendent or to otherwise seal the exhibit; instead, it seeks only to revise the superintendent's affidavit to include a notary signature, which it says was inadvertently omitted from the original affidavit. The school district's revised submission of evidence includes the same two emails that its counsel sent the superintendent and that were included in its original evidence. Boddy did not file a response to this motion.

---

2. The defendants in the federal case, *Boddy v. Grech*, S.D.Ohio No. 3:24-CV-327, are the XCCSD's board of education and the president of the board, Mary Grech. Grech is not named as a respondent in this mandamus action.

{¶ 9} Boddy filed her merit brief three weeks later, on June 26, 2025. Quoting extensively from the two emails from the school district's counsel that were produced as part of the school district's evidence, the brief accuses the school district of bad faith in "feigning the applicability of exemptions" to disclosure of the requested record when the emails appeared to acknowledge that the claimed exemptions would not apply.

{¶ 10} Two weeks after Boddy filed her merit brief, the school district filed a second motion for leave to resubmit evidence as well as a "motion to retrieve attorney client privileged materials." In its second motion for leave, the school district asks to be permitted to substitute the exhibit that it says was initially intended to be attached to the treasurer's affidavit: the email the school district sent Boddy that contained its response to her public-records request. In its motion to retrieve attorney-client-privileged materials, the school district asserts that the two emails included in its evidence are attorney-client-privileged communications that were inadvertently attached to the treasurer's affidavit. The school district requests that we issue an order directing Boddy to "return" the two disclosed emails and prohibiting any reference to them in the parties' merit briefs—even though Boddy had already filed her merit brief, which refers to the two emails numerous times. Boddy filed a response in opposition to the motion to retrieve and the second motion for leave to resubmit evidence.

{¶ 11} Despite this court's order, the school district did not submit the email-distribution list under seal for in camera inspection. *See* 2025-Ohio-1613. And, even though permitted to do so, the school district did not file under seal any other evidence that may contain protected student information. *See id.*

## II. ANALYSIS

### A. The School District's First and Second Motions to Resubmit Evidence

{¶ 12} The school district filed two motions asking for leave to revise its evidence. The first asks for leave to revise the superintendent's affidavit to include

a notary signature, which was omitted from the original affidavit. The second asks for leave to substitute the school district's emailed response to Boddy's public-records request in place of the two emails sent by the school district's counsel that were originally attached as an exhibit to the treasurer's affidavit.

{¶ 13} S.Ct.Prac.R. 3.13(B)(3) allows a party to file a motion for leave to file a revised document when the time for submitting the original document has expired. The school district properly requested leave to revise its previously filed evidence under this provision. Because Boddy did not file a response opposing the first motion and will not suffer prejudice if an affidavit containing a notary signature is substituted for one that is identical except for the missing signature, we grant that motion. *See State ex rel. Maxwell v. Brice*, 2021-Ohio-4333, ¶ 24 (granting the relator's motion for leave to submit supplemental evidence because doing so would not prejudice the respondent or delay this court's decision); *State ex rel. Slager v. Trelka*, 2024-Ohio-5125, ¶ 13 (granting the relator's motion for leave to file revised reply brief because the motion was not opposed and no prejudice would result).

{¶ 14} However, we deny the school district's second motion to resubmit evidence. Unlike the first submission of revised evidence, which is identical to the original except for a notary signature, the second submission would remove four pages of documents. More importantly, the school district's second motion was filed *after* Boddy had already made in her merit brief numerous references to and quotations from the originally submitted evidence. The school district's original submission of evidence consisted of only 14 pages; in reviewing those pages and determining that one of the affidavits was missing a notary signature, the school district had ample opportunity to notice that 4 of those 14 pages contained allegedly privileged material. By waiting more than six weeks, until after Boddy had cited that material in her merit brief, the school district missed the chance to ensure that this bell remained unrung. Moreover, excising that material from the evidence in

6

this case would prejudice Boddy, who relied on the material in her briefing. Excising the material would also be futile; Boddy's brief, which quotes the allegedly privileged material extensively, is now a public record, *see* S.Ct.Prac.R. 3.02(A)(1)(b) and 3.12(A) (documents filed in this court are public records), and no request to seal the case documents is before us.

## B. The School District's Motion to Retrieve Attorney-Client-Privileged Materials

{¶ 15} In its motion to retrieve attorney-client-privileged materials, the school district asserts that the two emails included in its originally filed evidence contain attorney-client-privileged materials that were inadvertently disclosed. The school district asks us to order Boddy to "return" the privileged materials and to prohibit the parties from referring to that material in their merit briefs. Even though the purportedly privileged material was included in the school district's original submission of evidence as well as its first revised submission of evidence, counsel for the school district asserts that he did not discover that the two emails had been disclosed until he received Boddy's merit brief on June 26, 2025. The school district argues that it did not waive the attorney-client privilege by disclosing email communications that the school district's attorney sent to the superintendent.

{¶ 16} The attorney-client privilege "protects against any dissemination of information obtained in the confidential relationship." *Am. Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991). But the privilege is waived by voluntary disclosure to others of the content of the statement. *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305, 316 (1951), *overruled in part on other grounds by State v. McDermott*, 1995-Ohio-80, syllabus; *State v. Post*, 32 Ohio St.3d 380, 385 (1987); *see also McDermott* at ¶ 11 (the attorney-client privilege can be waived either expressly or by conduct implying waiver). And in public-records cases, "'[v]oluntarily disclosing [a] requested record can waive any right to claim an exemption from disclosure' under the Public Records Act." *State ex rel. Dawson*

*v. Bloom-Carroll Local School Dist.*, 2011-Ohio-6009, ¶ 31, quoting *State ex rel. Cincinnati Enquirer v. Dupuis*, 2002-Ohio-7041, ¶ 22.

{¶ 17} Here, the two disclosed emails are communications from the school district's attorney to its superintendent regarding legal aspects of the school district's response to Boddy's public-records request. Thus, on its face, the emails contain privileged information. *See State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 2005-Ohio-1508, ¶ 29 ("The [attorney-client] privilege applies when legal advice of any kind is sought from the legal advisor in that capacity and the client's confidential communication relates to that purpose.").

{¶ 18} However, as stated above, the attorney-client privilege is waived by voluntary disclosure of the content of the statement to others. *Travelers Indemn. Co.* at 316; *Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2024-Ohio-5063, ¶ 15. The school district disclosed the contents of the emails containing privileged information by submitting them as part of its evidence—twice—in this mandamus action. The emails were disclosed as an exhibit to the treasurer's affidavit, and the treasurer may be presumed to have read the contents of his affidavit, including the exhibits he was authenticating. *See* Evid.R. 901(A) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."); *see also Thevenin v. White Castle Mgt. Co.*, 2016-Ohio-1235, ¶ 25 (10th Dist.), quoting *Thompson v. Hayes*, 2006-Ohio-6000, ¶ 105 (10th Dist.) ("'if the affiant lacks personal knowledge of the records attached to his or her affidavit, the affiant has not properly authenticated the records' "). The disclosure of attorney-client-privileged communications during discovery or at a hearing has been held to be a voluntary disclosure that waives the privilege, even when the disclosing party has claimed inadvertence. *See Hollingsworth v. Time Warner Cable*, 2004-Ohio-3130, ¶ 61, 66 (1st Dist.) (corporation waived attorney-client privilege by voluntarily disclosing privileged email in response to discovery request

and during hearing even though corporation claimed that disclosure was inadvertent).

{¶ 19} Moreover, the school district has failed to establish that it did not waive the privilege by disclosing the two emails. Under Evid.R. 502, the disclosure of attorney-client-privileged material to a government office or agency does not operate as a waiver in an Ohio proceeding if "(1) the disclosure [wa]s inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Evid.R. 502(B). The burden of proof regarding an alleged inadvertent disclosure of privileged material is on the party claiming inadvertent disclosure. *See Callan v. Christian Audigier, Inc.*, 263 F.R.D. 564, 565 and fn. 2 (C.D.Cal. 2009) (discussing Fed.R.Evid. 502). In its motion to retrieve, the school district did not establish any of these elements. First, the school district presented no evidence, by affidavit or otherwise, supporting its contention that the disclosure was inadvertent. Second, the school district did not take reasonable steps to prevent disclosure; it submitted the two emails as part of its evidence and then, when seeking leave to revise its evidence, submitted the emails a second time. Third, the school district did not take reasonable steps to rectify the error; although it now moves this court to claw back the disclosed emails, it delayed for six weeks before doing so—after having submitted the emails in its initially revised evidence and after Boddy had discussed the emails in her merit brief.

{¶ 20} Because the school district twice submitted the two emails as part of its evidence and did not establish the "inadvertent disclosure" limitation on waiver recognized in Evid.R. 502(B), the school district has waived the attorney-client privilege as to the emails. *See Brinkman*, 2024-Ohio-5063, at ¶ 15 (school district waived attorney-client privilege with respect to unredacted portions of redacted engagement letters it had provided to public-records requester); *see also Hollingsworth* at ¶ 66. Moreover, the relief the school district requests would be

ineffective because portions of the two emails would remain publicly accessible through the numerous quotations contained in Boddy's merit brief, as discussed above in Part II(A) of this opinion. We therefore deny the school district's motion to retrieve attorney-client-privileged materials.

### C. Original Action in Mandamus

#### 1. Legal Standard

{¶ 21} Ohio's Public Records Act requires a public office to make copies of public records available to any person upon request unless the records are subject to an exemption. R.C. 149.43(B)(1) and (A)(1). A writ of mandamus is an appropriate remedy to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b); *State ex rel. Castellon v. Cuyahoga Cty. Prosecutor's Office*, 2025-Ohio-2787, ¶ 8. The requester must establish by clear and convincing evidence a clear legal right to the records and a corresponding clear legal duty on the part of the respondent to provide them. *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10. A records custodian who withholds requested records has the burden to establish the applicability of an exemption. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus. A custodian does not meet this burden unless it proves that the requested records "fall squarely within" an exemption. *Id*.

#### 2. The Email-Distribution List Is a Record under Hicks and the Public Records Act

{¶ 22} Boddy argues that the requested email-distribution list is a record under the Public Records Act. A "public record" is a record kept by any public office. R.C. 149.43(A)(1). The XCCSD is a "public office" under the act. *See* R.C. 149.011(A). R.C. 149.011(G) defines "records" as including

> any document, device, or item, regardless of physical form or characteristic, . . . created or received by or coming under the

10

jurisdiction of any public office of the state or its political
subdivisions, which serves to document the organization, functions,
policies, decisions, procedures, operations, or other activities of the
office.

Thus, to establish that the email-distribution list is a record under R.C. 149.011(G), Boddy must show by clear and convincing evidence that the list (1) is a document, device, or item, (2) was created or received by or comes under the jurisdiction of the school district, and (3) serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the school district. *See Hicks*, 2024-Ohio-5449, at ¶ 15.

{¶ 23} Here, Boddy has proved that the first two elements of R.C. 149.011(G)'s definition of "records" are satisfied. First, the email-distribution list she requested is an "item" under R.C. 149.011(G). *See Hicks* at ¶ 16 (identifying email-distribution lists for township's newsletter as "item[s]" under R.C. 149.011(G)). Second, she has shown that the email-distribution list was created by the school district. According to the superintendent's testimony in Boddy's federal lawsuit,[3] the October 2024 newsletter was transmitted to the XCCSD community by email as part of his weekly communication to parents. The school district's website includes hyperlinks enabling users to "opt-in" or "sign up" to receive the superintendent's weekly newsletter. This evidence shows that the requested email-distribution list is generated through the XCCSD's website and is maintained by the XCCSD to disseminate the superintendent's newsletter. *See Hicks* at ¶ 16 (explaining how requested email-distribution list satisfied first two elements of "records" analysis). Thus, the email-distribution list requested by Boddy is an

---

3. The school district does not challenge Boddy's use of the superintendent's testimony in the federal case as evidence in this mandamus action.

"item" under R.C. 149.011(G) that was created by and comes under the jurisdiction of the school district.

{¶ 24} Boddy has also proved that the third element of R.C. 149.011(G)'s definition of "records" is satisfied in light of this court's holding in *Hicks*. In that case, we analyzed whether distribution lists used to mail and email a township's newsletter were records for purposes of R.C. 149.011(G). *Hicks*, 2024-Ohio-5449, at ¶ 11-12. Reasoning that the distribution lists were "central to connecting the township with its constituents, which is the purpose of a newsletter," we concluded that the third requirement of R.C. 149.011(G)'s definition of "records" was satisfied because the distribution lists "document[ed] particular functions and procedures of the township, revealing how and to whom the township's newsletter [wa]s regularly distributed." *Id*. at ¶ 17.

{¶ 25} The same rationale applies in this case. Here, the evidence shows that the distribution list used to email the superintendent's weekly newsletter is central to keeping the XCCSD community informed about news and events in the XCCSD—which is part of the superintendent's role. Accordingly, as in *Hicks*, the third element of R.C. 149.011(G)'s definition of "records" is satisfied because the email-distribution list documents particular functions and procedures of the school district, revealing how and to whom the superintendent's newsletter is regularly distributed. *See id*.

{¶ 26} The school district, relying on *State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, contends that the email-distribution list is not a public record, because it merely contains contact information used for administrative convenience. In *Johnson*, a newspaper publisher requested a writ of mandamus to compel state agencies to provide records containing the home addresses of various state employees. *Id.* at ¶ 7-10. In denying the writ request, we held that state employees' home addresses generally do not constitute records for purposes of R.C. 149.011(G), because that information does not "'document the organization,

functions, policies, decisions, procedures, operations, or other activities' " of state agencies. *Id*. at ¶ 25, 40, quoting R.C. 149.011(G). We concluded that "[a]t best, home addresses represent contact information used as a matter of administrative convenience." *Id*. Like the school district here, the dissent in *Hicks* asserted that *Johnson* presents the more apt analysis of whether a distribution list used to email a newsletter is a public record. *See Hicks* at ¶ 47 (Fischer, J., dissenting). The dissent opined that under *Johnson*, the email distribution lists in *Hicks* were not public records, because they "ha[d] no connection to the conduct of state or local government." *Id*. at ¶ 48. Here, the school district asserts that "the view of the dissent in [*Hicks*] more accurately analyzes whether an email distribution list is a public record."

{¶ 27} Nevertheless, the dissenting view in *Hicks* does not control this case. The distribution list used to email the superintendent's newsletter is more analogous to the distribution lists used to mail and email the township's newsletter in *Hicks* than to the list of state employees' home addresses that was at issue in *Johnson*. And the majority in *Hicks* held that the township's distribution lists "document[ed] particular functions and procedures of the township, revealing how and to whom the township's newsletter [wa]s regularly distributed." *Id*. at ¶ 17. That holding dictates a similar result here: the distribution list used to email the superintendent's newsletter is a public record under R.C. 149.011(G).

3. *The School District Has Failed to Establish that Disclosure of the Email-Distribution List Is Prohibited by the Public Records Act's "State or Federal Law" Exemption*

{¶ 28} The school district asserts that even if the email-distribution list requested by Boddy is deemed a record under R.C. 149.011(G), it nevertheless is exempt from disclosure under R.C. 149.43(A)(1)(v). R.C. 149.43(A)(1)(v) excludes from the definition of "public record" any record "the release of which is prohibited by state or federal law." Because the email-distribution list was created

and is maintained by an education institution, its disclosure may be prohibited by state and federal laws enacted to protect education records and other student information. The school district contends that the list contains personally identifiable student information and protected student information, the disclosure of which would violate FERPA, 20 U.S.C. 1232g.[4]

{¶ 29} We infer from the evidence that the requested email-distribution list includes the email addresses of the parents of XCCSD students, some of which may contain protected student information. *See* R.C. 3319.321(B) (prohibiting release of "personally identifiable information other than directory information concerning any student attending a public school" without written consent); 20 U.S.C. 1232g(b)(1) (prohibiting release of education records or personally identifiable information other than directory information without written consent).

{¶ 30} However, a records custodian who withholds requested records has the burden to establish the applicability of an exemption. *Jones-Kelley*, 2008-Ohio-1770, at paragraph two of the syllabus. To carry this burden, a records custodian must prove that the requested records "fall squarely within" the exemption. *Id*. Here, the school district has failed to submit the requested email-distribution list under seal for in camera review, despite being ordered to do so. *See* 2025-Ohio-1613. Nor did it submit any other evidence showing that the list contains protected student information. Because we cannot determine whether the list contains any protected student information that may be exempt from disclosure under the Public Records Act, the school district has failed to satisfy its burden to prove that the list falls squarely within the "state or federal law" exemption.

{¶ 31} Accordingly, because the email-distribution list requested by Boddy is a public record under *Hicks* and the school district failed to establish that a

---

4. Although the school district stated in its response to the public-records request that disclosure of this information would also violate the OSPA, R.C. 3319.321, the school district does not mention the state statute in its brief.

disclosure exemption applies, we grant a writ of mandamus ordering the school district to produce the list. *See* R.C. 149.43(B)(1). However, to protect student privacy, we direct the school district to redact any personally identifiable information from the list before producing it. *See State ex rel. ESPN, Inc. v. Ohio State Univ.*, 2012-Ohio-2690, ¶ 41 (granting writ of mandamus ordering the respondent to produce requested records "following the redaction of personally identifiable information").

### 4. Statutory Damages, Court Costs, and Attorney Fees

{¶ 32} Boddy also requests awards of statutory damages, court costs, and attorney fees. Regarding statutory damages, R.C. 149.43(C)(2) states that damages "shall" be awarded if a public office has failed to comply with its obligations under R.C. 149.43(B). In this case, Boddy is entitled to damages if (1) she transmitted her public-records request by hand delivery, electronic submission, or certified mail, (2) her request was transmitted to the public office or person responsible for the public records, (3) the request fairly described the public records being sought, and (4) the public office or person responsible for the public records failed to fulfill their duties under R.C. 149.43(B) by not promptly producing the records. *State ex rel. Ware v. Fankhauser*, 2024-Ohio-5037, ¶ 22. Here, it is undisputed that Boddy transmitted her public-records request by email to the XCCSD's public-records custodian and that the request fairly described the public record being sought. As explained above in Part II(B)(2) of this opinion, the list Boddy requested is a record under R.C. 149.011(G), and the school district has not established that the list contains protected student information that is exempt from disclosure under any state or federal law. Thus, the school district was required to provide the list to Boddy and, by not promptly producing the list, failed to fulfill its obligation under R.C. 149.43(B). Accordingly, Boddy is entitled to statutory damages.

{¶ 33} "Statutory damages accrue at the rate of $100 for each business day the [public] office failed to meet one of R.C. 149.43(B)'s obligations, beginning on

the day the requester files a mandamus action, up to $1,000." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 15, citing R.C. 149.43(C)(2). Here, because more than ten business days have elapsed since the filing of this action and the school district still has not produced the email-distribution list that Boddy requested, we award her $1,000 in statutory damages.

{¶ 34} Boddy is also entitled to recover her court costs. Because we grant a writ of mandamus ordering production of the requested email-distribution list, an award of court costs is mandatory under R.C. 149.43(C)(3)(a)(i). *State ex rel. Platt v. Montgomery Cty. Bd. of Elections*, 2025-Ohio-2079, ¶ 41.

{¶ 35} Boddy also seeks recovery of her attorney fees. If a court "renders a judgment that orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)] . . . , the court may award reasonable attorney's fees to the relator." R.C. 149.43(C)(3)(b). Attorney fees are appropriate here because the school district failed to comply with R.C. 149.43(B) by withholding a record that it was required to produce. *See Brinkman*, 2024-Ohio-5063, at ¶ 41 (awarding the relator attorney fees for the respondent's failure to comply with obligation under R.C. 149.43(B)); *see also Platt* at ¶ 44 (same).

{¶ 36} Accordingly, we grant Boddy's request for an award of attorney fees. We defer our final determination of the amount of attorney fees pending Boddy's filing of an itemized application in accordance with the standards set forth in *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5110, ¶ 35-36. The school district may respond to Boddy's application. *See id*. at ¶ 35.

### III. CONCLUSION

{¶ 37} For the foregoing reasons, we grant a writ of mandamus ordering the school district to produce the email-distribution list requested by Boddy. Further, we direct the school district to redact any personally identifiable information before producing the list. We order the school district to pay $1,000 in statutory damages to Boddy, and we award Boddy her court costs. We also grant Boddy's request to

recover her reasonable attorney fees. Boddy shall submit her itemized fee application within 20 days, and the school district may file a response within 14 days of the filing of Boddy's application. Finally, we grant the school district's first motion for leave to resubmit evidence, deny its second motion for leave to resubmit evidence, and deny its motion to retrieve attorney-client-privileged materials.

Writ granted.

_____

The Law Firm of Curt C. Hartman, Curt C. Hartman; and the Finney Law Firm and Christopher P. Finney, for relator.

McCaslin, Imbus & McCaslin and Bernard W. Wharton, for respondents.

_____